Maurice J. SALEM (Individually and in his capacity as Chairman of the East Fishkill Democratic Committee), Plaintiff,

v.

William PAROLI, Jr. (individually and as Dutchess County Clerk); James D. Pagones (individually and as Acting Justice State Supreme Court); Paul J. Goldstein and Michael J. Neshewat, Defendants.

In re Maurice J. Salem a/k/a Maurice J. Neshewat, Debtor.

Maurice J. Salem, Plaintiff–Appellant,

v.

James D. Pagones, individually and as Acting Justice Supreme Court, Paul J. Goldstein, Goldstein & Metzger, LLP and Michael J. Neshewat, Defendants–Appellees.

Nos. 99 CIV. 2620 WCC,
00 CIV. 5974 WCC.
Bankruptcy No. 00–30037 JEB.

United States District Court,
S.D. New York.

March 26, 2001.

---

Maurice J. Salem, Wappingers Falls, NY, pro se.

Eliot Spitzer, Attorney General of the State of New York, New York City, for William Paroli, Jr. and James D. Pagones.

Carolyn Cairns Olson, Asst. Attorney General, of counsel, Goldstein & Metzger,

LLP, Poughkeepsie, NY, for Paul J. Goldstein and Michael J. Neshewat.

Neal S. Mann, Assistant Attorney General, of counsel, Banner & Banner, Poughkeepsie, NY, for Paul J. Goldstein, Goldstein & Metzger, LLP and Michael J. Neshewat.

Karen E. Storzieri, of counsel.

### AMENDED OPINION AND ORDER

CONNER, Senior District Judge.

Pro se plaintiff Maurice J. Salem, a/k/a Maurice J. Neshewat, individually and in his capacity as Chairman of the East Fishkill Democratic Committee, brings this civil rights action against defendants William Paroli, Jr., individually and as Dutchess County Clerk and Clerk of the Court, James D. Pagones, individually and as Acting Justice, New York State Supreme Court (collectively, the "State defendants"), Paul J. Goldstein and Michael J. Neshewat ("Michael") (collectively, the "Individual defendants"), alleging violations of 42 U.S.C. §§ 1983 and 1985. He also raises state law claims for abuse of process, malicious prosecution, negligent and intentional infliction of emotional distress and breach of contract against the Individual defendants.

Plaintiff seeks money damages, vacatur of a default judgment, injunctive relief, and a declaratory judgment. He also requests that this Court reverse the dismissal of his adversary proceeding in a related federal bankruptcy action.[1] Defendants move to dismiss all of plaintiff's claims pursuant to FED. R. CIV. P. 12, and to affirm the Bankruptcy Court's decision. In the interest of judicial economy, we will consider both cases together. For the reasons stated below, defendants' motion is granted and the Bankruptcy Court's dismissal is affirmed.

### BACKGROUND

The following facts, accepted as true for the disposition of the instant motion, are gleaned from the Complaint, the Amended Complaint and defendants' moving papers.[2] This action arises out of protracted litigation between plaintiff and his brother, Michael, a licensed medical doctor living and practicing in Michigan, and between plaintiff, a local Democrat leader, and the Republican-majority Dutchess County government (the "County"). On August 10, 1989, Paul J. Goldstein, Michael's attorney, filed a petition in Dutchess County for conservatorship over plaintiff's ailing mother. An independent conservator was appointed and directed to collect approximately $455,000 from plaintiff's family members. Before all assets were collected, plaintiff's mother died and plaintiff was appointed executor and sole beneficiary of his mother's estate, and declared owner of a 1989 Mercedes Benz automobile that had belonged to his mother. (Complt. ¶ 4.)

1. *Salem v. Pagones (In re Salem)*, No. 00–30037 (Bankr.2000 S.D.N.Y.).

2. Defendants bring this motion pursuant to FED. R. CIV. P. 12(b)(1) (lack of jurisdiction) and (6) (failure to state a claim). In general, the district court must accept the allegations contained in the complaint as true for purposes of deciding a motion to dismiss. *See Cohen v. Koenig*, 25 F.3d 1168, 1172–73 (2d Cir.1994). When a motion to dismiss challenges the court's jurisdiction, however, the district court may look beyond the allegations of the complaint. "Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint ... are challenged." *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *see also LeBlanc v. Cleveland*, 198 F.3d 353, 355 (2d Cir.1999) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

Sometime in 1990, Michael reported the car stolen to his insurance company. (*See* State Defs. Am. Not. Mot. Dismiss, Ex. A at 3.) A short time later, plaintiff was charged by the County District Attorney, who he claims "[was] part of said Republican leadership" (Am.Complt. ¶ 17), with making a false statement under oath when he testified that he was the car's owner. (*See* State Defs. Am. Not. Mot. Dismiss, Ex. A at 3.) Plaintiff then sued the County in New York Supreme Court for, *inter alia*, false arrest and malicious prosecution, though it is unclear when or why plaintiff was arrested. The case was before Justice Ralph Beisner, who plaintiff claims "was the former head of the . . . County Republican Party and part of said Republican leadership." (Am.Complt. ¶ 17.) In 1991, Justice Beisner denied plaintiff's motion to compel discovery in the lawsuit. Plaintiff, "realizing that his lawsuit was not going to be successful because of Justice Beisner and facing criminal prosecution" (*id.* ¶ 18), agreed to dismiss the action in exchange for the County's dropping of its criminal charges against him and providing the discovery material he sought. (*See id.*; State Defs. Am. Not. Mot. Dismiss, Ex. A at 3.)

On August 11, 1992, plaintiff brought an action on the same claim against the County and its leaders in the Southern District of New York. *See Salem v. Town of East Fishkill*, No. 92–CV–6192 (GLG/BDP). In December 1992, plaintiff was declared owner of the Mercedes Benz by a New York Department of Motor Vehicles Administrative Law Judge. (Complt. ¶ 5.) The car, apparently still reported "stolen,"

was "discovered" in 1993 by the insurance company when plaintiff's wife was involved in an accident while driving it. The insurance company commenced a fraud action, seeking to prevent both brothers from possessing the car and to declare the company the rightful owner. Michael paid $40,000 in restitution to the insurance company and the insurance fraud charges were dropped. (*See* State Defs. Am. Not. Mot. Dismiss, Ex. A at 3.) In plaintiff's federal case, the court ruled that Justice Beisner had absolute judicial immunity. (Am. Complt. ¶ 18.) The case went to trial against the other defendants, and on January 24, 1996, a jury awarded plaintiff $15,000 in damages. (*Id.* ¶ 21.)

On July 9, 1996, plaintiff sued Michael in New York Supreme Court ("Action # 1"), seeking damages relating to his ownership of the car. (Complt. ¶ 9.) On July 17, 1996, Michael filed a separate action in the same court ("Action # 2"), alleging abuse of process and malicious prosecution, and seeking damages on the basis that plaintiff was *not* the owner of the vehicle. (*Id.* ¶ 10; Goldstein Aff. ¶ 10(a).) On July 24, 1996, Michael answered the Action # 1 Complaint, but did not raise a counterclaim. (Complt. ¶ 11.) [3] Plaintiff alleges Goldstein testified that he did not assert a counterclaim in his Action # 1 Answer on behalf of Michael because the pleadings "crossed in the mail." (*Id.* ¶ 12.) Plaintiff disputes this, claiming that "there were eight days between the two actions and the mail was never used" (*id.*), and that Goldstein in fact conspired with the "Republican leadership" to bring Action # 2 "not for the legitimate purpose of suing Plain-

---

**3.** On July 26, 1996, Michael filed a diversity action in Michigan federal court claiming ownership of the car and asserting claims of breach of contract, unjust enrichment, fraud and injurious falsehood. The district court dismissed the first three claims on statute of limitation grounds and the fourth under col-

lateral estoppel. The Sixth Circuit affirmed the decision on the first three claims, and affirmed the fourth on different grounds, holding that plaintiff's allegedly false statements were privileged. *See Neshewat v. Salem,* 173 F.3d 357 (6th Cir.1999).

tiff ... but for the sole purpose of obtaining a default judgment [against plaintiff]." (Am.Complt. ¶ 23.)

When plaintiff did not answer the Action # 2 Complaint, Michael moved for a default judgment on September 21, 1996. On October 2, 1996, plaintiff filed an affidavit in opposition to Michael's default judgment motion, and mailed it with his affidavit of service to the Clerk of the Court, defendant Paroli, who plaintiff claims "is also part of said Republican leadership." (*Id.*) On October 4, 1996, the clerk's office received plaintiff's affidavit by mail and signed a receipt therefor. (Complt. ¶ 16.) Plaintiff claims that Paroli or his agent "intentionally or negligently ... failed to deliver said affidavit to Justice Bernhard [the presiding judge]." (Am.Complt. ¶ 24.) Consequently, on November 6, 1996, Justice Bernhard entered a default judgment against plaintiff, finding "no opposition" to Michael's motion. (Complt. ¶ 17.)

Plaintiff then spoke to Justice Bernhard's law clerk, who instructed plaintiff to send all papers directly to him, thus bypassing Paroli and the clerk's office altogether. Plaintiff did so, and Justice Bernhard vacated the default judgment on June 24, 1997, but did not address the merits of the case. (Am.Complt. ¶¶ 25–27.) On July 3, 1997, pursuant to a stipulation from both parties, Justice Bernhard consolidated the two actions. (*Id.* ¶ 28.) On September 19, 1997, Michael appealed the June 24, 1997 order vacating the default judgment. (*Id.* ¶ 29.) On July 10, 1998, while Michael's appeal was pending, Justice Bernhard dismissed Actions # 1 and # 2 on the merits on *res judicata* grounds. (*Id.* ¶ 30.)

The record before the Appellate Division included the signed mail receipt for plaintiff's original affidavit in opposition to Michael's September 21, 1996 motion for default judgment, the affidavit itself, and a second affidavit asserting Paroli's failure to deliver the original affidavit. (*Id.* ¶ 32.) Nonetheless, on September 21, 1998, the Appellate Division reversed Justice Bernhard's June 24, 1997 decision and reinstated the default judgment, concluding that plaintiff "failed to demonstrate a reasonable excuse for his delay in appearing or answering and a meritorious defense." *Neshewat v. Neshewat*, 253 A.D.2d 801, 677 N.Y.S.2d 508 (2d Dep't 1998).

On September 29, 1998, plaintiff filed another motion with Justice Bernhard to re-argue the default judgment, claiming that Justice Bernhard did not consider the merits of the case in his January 24, 1997 order. Justice Bernhard granted plaintiff's motion on October 19, 1998. (Am. Complt. ¶ 33.) Michael moved for renewal and reinstatement of the default judgment, arguing that plaintiff presented "no new evidence" to warrant vacating it, but this motion was denied on November 3, 1998. (*Id.* ¶ 34.) On December 31, 1998, Justice Bernhard retired and his cases were assigned to defendant Pagones. Plaintiff claims that Paroli "assigned ... Pagones to the case without using the required New York State Individual Assignment System ["IAS"] that randomly assigns judges." (*Id.* ¶ 38.) Plaintiff further alleged that

> [a]lthough ... Pagones was technically elected to his position as Judge, he was in effect appointed by the leaders of the Dutchess County Republican Committee.... Pagones did not have any opponents in the November 1998, election and even if he did ... Pagones was sure to win because Dutchess County is over 90% Republican and Conservative. The entire Dutchess County Government is run by the leaders of the Republican Committee. The same individuals who were behind Plaintiff['s] injury in *Salem*

*v. East Fishkill* ... are behind the order granting a default in this action. (Complt. ¶ 33.) [4]

On February 2, 1999, Michael filed a second motion to renew and reargue. Plaintiff claims that Michael and Goldstein "passed up an opportunity to appeal Justice Bernhard's [November 3, 1998] order," because "Goldstein had direct or indirect prior knowledge that the newly assigned Justice ... Pagones, who was in debt to the Republican leadership for giving him his position, would grant his second motion to renew." (Am.Complt. ¶¶ 36–37.) On March 16, 1999, Justice Pagones, allegedly "in concert or conspiracy with ... Goldstein and Paroli ... and based on political retaliation" (*Id.* ¶ 39), granted Michael's motion, reinstated the default judgment, and scheduled an inquest on April 23, 1999 to determine the amount of damages.

Plaintiff commenced the instant action on April 12, 1999, challenging Justice Pagones's decision to reinstate the default judgment and requesting a stay of the damages inquest. At an April 23, 1999 conference before this Court, we denied the stay and placed the case on Suspense Order pending plaintiff's exhaustion of his state court remedies. (*Id.* ¶ 39–40.) On April 26, 1999, at the damages inquest, plaintiff moved for Justice Pagones to recuse himself from the proceedings, claiming that Pagones was his political enemy and noting that he was a named defendant in the instant federal action. Justice Pagones denied the motion, allegedly telling plaintiff that he did not have to recuse himself " 'unless ... ordered to do so by a higher authority.' " (*Id.* at 41.)

On May 7, 1999, Justice Pagones held plaintiff liable on the malicious prosecution and abuse of process claims for damages amounting to $166,884.86. (*Id.* ¶ 42; State Defs. Am. Not. Mot. Dismiss, Ex. A at 4.) Plaintiff claims he then notified Michael and Goldstein, "warning them not to enter the judgment because of his financial situation and that he was willing to settle the matter." (Am.Complt. ¶ 42.) They refused and on June 16, 1999 judgment was entered which, according to plaintiff, froze his assets, garnished his wages, and ruined his credit rating. (*Id.*)

Plaintiff appealed both the judgment and Justice Pagones's decision not to recuse himself, but failed to file a proper appendix in accordance with N.Y. C.P.L.R. 5528 and 22 N.Y.C.R.R. § 670.10. He filed for leave to amend his appendix and Michael cross-moved to dismiss the appeal. (State Defs. Mem. Supp. Mot. Dismiss at 7.) On February 11, 2000, plaintiff received a Notice of Petition for a hearing set for February 28, 2000 before Justice Pagones

---

**4.** Plaintiff also states that in September 1999, Paroli's father, then Commissioner of Election for Dutchess County and the former Chairman of the Dutchess County Republican Party, joined in a suit against plaintiff in his capacity as Chairman of the East Fishkill Democratic Committee seeking to invalidate the entire Town Caucus. Plaintiff alleges that Paroli again violated the IAS and assigned a justice to the case "who owe[d] his position to the Republican leadership." The Caucus was declared null and void because plaintiff, as Chairman, signed its Certificate of Nomination instead of the Secretary, as was required by law. Plaintiff admittedly failed to appeal because: 1) he had already lost 14 cases in the Appellate Division; 2) he was "positively certain that the Appellate Division favors the Republican leadership in Dutchess County [which] dominates the Ninth Judicial District"; and 3) "in this completely Republican-dominated Town and County the Democrats were unlikely to win so an appeal would not have been worth it." He concludes that these circumstances denied him his constitutional right to an impartial trial court in his capacity as Chairman of the East Fishkill Democratic Committee. (Am.Complt. ¶¶ 53–54.) However, he does not seek specific relief from this alleged violation, and appears to offer this anecdote merely as further evidence of Paroli's alleged conspiratorial actions toward him.

pursuant to N.Y. C.P.L.R. 5206(e). The petition sought to enforce the default judgment and direct the sale of plaintiff's house. (Am.Complt. ¶ 43.) On February 23, 2000, plaintiff filed for bankruptcy in the Southern District of New York, and served all defendants with notice thereof. Despite the notice, on April 3, 2000 Justice Pagones held that because plaintiff merely filed an "Affidavit in Opposition," and not a formal "Answer"—as is required by N.Y. C.P.L.R. 402—plaintiff remained in default, and Pagones granted Michael's petition. Justice Pagones also directed Michael to "submit a proposed judgment on five days notice to [plaintiff] and to the bankruptcy court." (Bankr. Record on Appeal ("Record") at 19–20.) On April 12, 2000, Goldstein served plaintiff with a Notice of Entry, which gave plaintiff thirty days to appeal Justice Pagones's order, but plaintiff did not do so. (Am.Complt. ¶¶ 44–46.)

On April 13, 2000, the Appellate Division, Second Department granted Michael's cross-appeal and dismissed plaintiff's appeal "for failure to serve and file a proper appendix," citing N.Y. C.P.L.R. 5528 and 22 N.Y.C.R.R. § 670.10 and denying plaintiff's motion "as academic." (State Defs. Am. Not. Mot. Dismiss, Ex. A.) On April 20, 2000, Goldstein wrote to Justice Pagones, informed him that he had received "official notice" from the Bankruptcy Court of plaintiff's bankruptcy filing, and stated his intention to take no further action until the bankruptcy case ended. (Record at 53.) On May 2, 2000, plaintiff filed an adversary proceeding complaint in Bankruptcy Court seeking injunctive relief and damages. (*Id.* at 3.)

On June 20, 2000, the New York Court of Appeals dismissed plaintiff's appeal of the Second Department's April 13, 2000 decision *sua sponte* "upon the ground that no substantial constitutional ground is directly involved." (State Defs. Am. Not. Mot. Dismiss, Ex. A.) After a June 19, 2000 hearing, the Bankruptcy Court on June 28, 2000 dismissed the adversary proceeding complaint against all defendants pursuant to FED. R. CIV. P. 12(b)(6). (Record at 54.) Plaintiff filed his bankruptcy appeal on July 7, 2000. (*Id.* at 55.) On July 17, 2000, this Court, having learned that plaintiff had exhausted all his state remedies, ordered plaintiff's civil rights action removed from the Suspense docket and reinstated to the active calendar.

## DISCUSSION

Defendants move to dismiss plaintiff's amended complaint pursuant to FED. R. CIV. P. 12. Pursuant to Rule 12(b)(1), both the State and Individual defendants argue that this Court lacks jurisdiction under the *Rooker–Feldman* doctrine, and the State defendants alternatively invoke Eleventh Amendment immunity and judicial immunity. Assuming jurisdiction is found, both defendant groups argue, under Rule 12(b)(6), that plaintiff has failed to state a claim under §§ 1983 or 1985. Additionally, the Individual defendants urge this Court to exercise its discretion under 28 U.S.C. § 1367 and refuse to hear plaintiff's state law claims or, alternatively, to dismiss the claims on collateral estoppel or statute of limitations grounds; they also seek sanctions against plaintiff. Finally, all defendants seek affirmance of the Bankruptcy Court's dismissal of plaintiff's adversary proceeding complaint.[5]

### I. Standard of Review for Motion to Dismiss

■ A complaint should not be dismissed "unless it appears beyond doubt

---

**5.** Paroli is not a party in the bankruptcy action.

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Moreover, "we read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). In general, the district court must accept the allegations contained in the complaint as true for purposes of deciding a motion to dismiss. *See Cohen*, 25 F.3d at 1172–73. Nonetheless, "it is proper to consider public documents ... to determine whether claims are barred by prior litigation." *Bal v. New York City Loft Bd.*, No. 00 Civ. 1112, 2000 WL 890199, at *2 (S.D.N.Y. Jul. 5, 2000).

Furthermore, when a motion to dismiss challenges the court's jurisdiction, the district court may look beyond the allegations of the complaint. *Moyer*, 190 F.3d at 1318; *see also Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988) ("[i]f a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute"). Indeed, the district court may be required to consider evidence outside the complaint when a party challenges the court's jurisdiction. The Court of Appeals for the Second Circuit has recently stated that "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *LeBlanc*, 198 F.3d at 355; *see also Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir.1998) ("In view of the foregoing factual disputes, it was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction.").

## II. *Rooker–Feldman Doctrine*

■ Under the *Rooker–Feldman* doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998) (reviewing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)); *Sundwall v. Leuba*, No. Civ. A. 300 CV 1309, 2001 WL 58834, at *6 (D.Conn. Jan. 23, 2001); *Bell v. New York*, No. 99 Civ. 5809, 2000 WL 1273637 *3, 2000 LEXIS 12854, at *10 (S.D.N.Y. Sep. 6, 2000). This applies even to interlocutory state court orders. *See Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir.1996). Moreover, "even where a state court judgment is not being appealed directly, 'the District Court is in essence being called upon to review the state court decision' where 'claims presented to a ... District Court are inextricably intertwined with the state court's determination.'" *Bell*, 2000 WL 1273637 *3, 2000 LEXIS 12854, at *10 (citing *Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).

Inextricably intertwined "means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996). In short, "a federal claim is

'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.' " *Bell,* 2000 WL 1273637 *4, 2000 LEXIS 12854, at *12 (citations omitted).

■ Here, plaintiff is clearly asking this Court to overturn a state court judgment. Plaintiff's amended complaint "seeks," *inter alia,* "an order, pursuant to ... [FED. R. CIV. P.] 60(a) or (b)(4) or (6), setting aside [Justice Pagones's] $166,884.86 default judgment against him." (Am.Complt. ¶ 2.) However, "*Rooker–Feldman* applies not only to decisions of the highest state courts, but also to decisions of the lower state courts." *Sundwall,* 2001 WL 58834, at *6. Furthermore, plaintiff's various appeals were heard and dismissed, by both the Appellate Division, Second Department and the New York Court of Appeals, and he admittedly waived his right to appeal the April 12, 2000 Notice of Entry. (*See* Am.Complt. ¶¶ 44–46.) Thus, plaintiff's request for an order setting aside the default judgment is denied.

■ Plaintiff also seeks a permanent injunction against Pagones enjoining him from "presiding over cases where the litigants have pending lawsuits against him and ... any future action involving the [p]laintiff." (*Id.* ¶ 2.) However, "[t]he 1996 amendments to § 1983 provide that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.' " *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (citation omitted).

No declaratory decree was violated in plaintiff's state case. Moreover, because plaintiff appealed Justice Pagones's decision not to recuse himself and both the Appellate Division, Second Department and the New York Court of Appeals denied the appeal, declaratory relief was not "unavailable" to him. Thus, plaintiff is precluded from seeking injunctive relief in this Court, *see Moccio,* 95 F.3d at 199–200, and his claim for a permanent injunction against Pagones is dismissed.

■ "Plaintiff also seeks a declaratory judgment, declaring the New York Statute, CPLR 5528, as interpreted by the state court, as unconstitutional." (Am. Complt. ¶ 3.) He argues that he is raising a general facial, and not an as-applied, challenge to the statute. However, his phrasing in the Amended Complaint and the Appellate Division, Second Department's holding belie this assertion. (*See* State Defs. Am. Not. Mot. Dismiss, Ex. A.) Moreover, *Rooker–Feldman* principles apply to both facial and as-applied challenges to state statutes. *See Sassower v. Mangano,* 927 F.Supp. 113, 119 (S.D.N.Y.1996), *aff'd,* 122 F.3d 1057 (2d Cir.1997), *cert. denied,* 525 U.S. 872, 119 S.Ct. 170, 142 L.Ed.2d 139, *reh'g denied,* 525 U.S. 1035, 119 S.Ct. 582, 142 L.Ed.2d 486 (1998) (precluding facial challenge to New York's attorney disciplinary rules that had been raised in state court proceedings under *Rooker–Feldman* doctrine). Therefore, plaintiff's claim for a judgment declaring N.Y. C.P.L.R. 5528 unconstitutional as applied to him is denied.

■ Most significantly, plaintiff's anchor claim, based on conspiracy,[6] fails un-

---

6. Although plaintiff alleges a conspiracy to violate his civil rights under both §§ 1983 and 1985, "[s]uch a conspiracy is actionable under § 1985 only if it involves a discriminatory animus based on race or some other invidious classification." *Posr v. Court Officer Shield*
*# 207,* 180 F.3d 409, 419 (2d Cir.1999). Because plaintiff has not alleged any such "discriminatory animus" in the Amended Complaint, his § 1985 claim is dismissed, and we will treat the allegations as a § 1983 conspiracy claim.

der *Rooker–Feldman.* Initially, we note that although plaintiff implicates Paroli as a key player in the alleged conspiracy (*see* Am.Complt. ¶¶ 23, 38–39, 53–56), he concedes that Paroli's alleged role in entering the default judgment against him "is irrelevant or a moot issue because Justice Bernhard subsequently vacated the Default Judgment again on December 2, 1998." (Pl. Mem. Opp. Mot. Dismiss at 10.) Moreover, plaintiff admits that "although one issue in the instant action deals with a default judgment in favor of ... [Michael], practically this entire Complaint is against [Pagones, Paroli and Goldstein] for using their office to injury [sic] Plaintiff ... for political retaliatory reasons." (Am.Complt. ¶ 14.) However, despite his numerous allegations of "political retaliation" and a corrupt "Republican leadership" conspiracy against him, plaintiff nowhere asserts that Goldstein is a Republican or in any way politically affiliated with Pagones or Paroli.

Plaintiff argues that this Court must find jurisdiction nonetheless because

[u]ltimately, the issue here is whether Defendants' entire conduct in reinstating the Default Judgment violated Plaintiff's rights under § 1983. The instant constitutional claims arose after Actions # 1 & # 2 were filed in July of 1996.... Plaintiff herein could not have raised any claims, much less a constitutional claim. There was never a cause of action brought by the Plaintiff herein where a constitutional issue was raised.

(Pl. Mem. Opp. Mot. Dismiss at 10.) However, in light of plaintiff's aforementioned pleading deficiencies and self-defeating admissions, along with his waived opportunities either to raise allegations of Paroli's actions or appeal Pagones's conduct in the state appellate courts, his § 1983 suit is merely an attempt to recast his state case as a federal constitutional claim. *See*

*Holmes v. State of New York Office of Court Admin.,* No. 00 Civ. 7871, 2001 WL 5035 (S.D.N.Y. Jan. 2, 2001) (dismissing state landlord-tenant claims, raised as § 1983 conspiracy claims against two New York Civil Court judges and court administration officers, under *Rooker–Feldman* doctrine); *McAllan v. Malatzky,* No. 97 Civ. 8291, 1998 WL 24369, at * 2 (S.D.N.Y. Jan.22, 1998) (finding no subject matter jurisdiction under *Rooker–Feldman* doctrine where plaintiff attempted to recast his complaint about state Housing Court procedure as a § 1983 claim).

*Rooker–Feldman* clearly prohibits the instant action, for district courts "do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings *even if those challenges allege that the state court's action was unconstitutional.*" *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303 (emphasis added); *see also Sundwall,* 2001 WL 58834, at *7–8 (dismissing conspiracy claims against three state court judges who presided over land foreclosure action under *Rooker–Feldman* doctrine); *Bell,* 2000 WL 1273637 *4, 2000 LEXIS 12854, at *12 (dismissing, under *Rooker–Feldman* doctrine, *pro se* plaintiff's claims that adverse state court judgment over student loan debt was "procured fraudulently"). The copious litigation it has spawned notwithstanding, plaintiff's state case is a simple estate dispute at best, and a family vendetta at worst. Plaintiff lost in the state courts, the decision was upheld on appeal, and he now seeks to reverse his loss by challenging in federal court the actions of all the parties involved with that loss. However, because his "federal claim[s] succeed[ ] only to the extent that the state court [allegedly] wrongly decided the issues before it," *Bell,* 2000 WL 1273637 *4, 2000 LEXIS 12854, at *12, plaintiff's federal claims are "inextricably intertwined" with his state claims. Thus,

to hear these claims, this Court would have to "review and declare invalid the lower state court's orders," which "is precisely the sort of action that *Rooker–Feldman* is designed to prohibit." *Sundwall*, 2001 WL 58834, at \*7. Plaintiff's § 1983 claim is therefore dismissed with prejudice as to all defendants. We can readily understand why plaintiff feels he has been unfairly treated in the state courts, but the *Rooker–Feldman* doctrine deprives the federal courts of the power to do anything about it.

### III. *State Claims*

Pursuant to the discretion afforded us by 28 U.S.C. § 1367, we decline to hear plaintiff's state court claims, and we decline to impose sanctions on plaintiff.

### IV. *Bankruptcy Case*

Plaintiff appeals to this Court pursuant to 28 U.S.C. § 158 from an order of Hon. Jeremiah E. Berk, U.S.B.J., dated June 28, 2000, which granted defendants' motion under FED. R. CIV. P. 12(b)(6) to dismiss plaintiff's adversary proceeding complaint for failure to state a claim. Plaintiff argues that Judge Berk incorrectly dismissed the complaint because defendants willfully violated the automatic stay provision of 11 U.S.C. § 362(a). Defendants contend that they did not willfully violate the stay because they had no "official" notice of it, or, alternatively, that even if it was violated, plaintiff suffered no damages because no action was taken to enforce the judgment against him. Pagones also invokes judicial immunity, and Goldstein argues that only Pagones violated the stay, which nullifies the April 3, 2000 decision and any actions taken pursuant to it, which shields Goldstein from liability. For the reasons stated below, Judge Berk's order is affirmed.

■ We review a Bankruptcy Court's conclusions of law *de novo* and its findings of fact under a "clearly erroneous" standard. *See In re Florio*, 229 B.R. 606, 608 (S.D.N.Y.1999) (citing *In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir. 1992)). Although Judge Berk issued no opinion in connection with his June 28 order, we assume that he interpreted the facts in the light most favorable to plaintiff in accordance with the rules governing a motion to dismiss. *See* n. 2 and Section I, *supra.* 11 U.S.C. § 362(h) states that "[a]n individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." The Second Circuit further explains that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h)." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir.1990).

■ The automatic stay provision of 11 U.S.C. § 362 "is effective at the moment the petition is filed and defendant's knowledge is immaterial to a determination of whether the stay was violated." *Siskin v. Complete Aircraft Servs., Inc. (In re Siskin)*, 231 B.R. 514, 517 (Bankr.E.D.N.Y. 1999) (citation omitted). However, "[k]nowledge of the filing of the petition does ... affect the determination of whether an alleged violation of the automatic stay was willful." *Id.* (citations omitted). In the instant case, plaintiff filed his petition and served defendants with notice thereof on February 23, 2000. (Record at 17, 18.) Thus, Justice Pagones's April 3, 2000 decision in the under-

lying state case constituted "the . . . continuation . . . of a judicial . . . proceeding against the debtor that was . . . commenced before the commencement of the [bankruptcy] case" in violation of 11 U.S.C. § 362(a)(1). Pagones stated in his decision that "[plaintiff] has not provided any affidavit or other evidence that the bankruptcy court has issued a stay." (Record at 19.) This patent misreading of bankruptcy law by Pagones tends to show that his action in disregard of the stay was not a "willful" violation of the law. Pagones's lack of malice towards plaintiff is further shown by his ordering Michael to "submit a proposed judgment on five days notice to [plaintiff] and to the bankruptcy court" rather than entering judgment at that time. (*Id.* at 19–20.)

Furthermore, both Pagones and Goldstein took active steps to stop the state proceedings once they received formal notice of plaintiff's bankruptcy petition. On April 20, 2000, Goldstein wrote Pagones, informing him that he had received "official notice" from the Bankruptcy Court of plaintiff's petition, and stating his intention to take no further action to effect the sale of plaintiff's home until the bankruptcy case ended. (*Id.* at 53.) As a result, Justice Pagones never signed a judgment to sell plaintiff's home and plaintiff was never displaced therefrom; thus he suffered no actual damages. *See Whitt v. Philadelphia Hous. Auth. (In re Whitt)*, 79 B.R. 611, 613 (Bankr.E.D.Pa.1987) ("No damages will be awarded as a result of the violation of the automatic stay if there was no evidence that the debtor suffered any harm.") Moreover, plaintiff represented himself throughout the action, and thus incurred no attorney's fees. *See In re Hill*, 222 B.R. 119, 124 (Bankr.N.D.Ohio 1998) (finding that when debtor's sole damages from stay violation are attorney's fees, the court "should review those fees carefully to avoid the reality or the appear-

ance that the court is rewarding an excessively litigious approach to such violations."); *In re Haan*, 93 B.R. 439, 441 (Bankr.W.D.N.C.1988) (finding that when attorney's fees are only injury from non-willful violation of stay, this "should operate . . . to discourage filing of the sanctions motion in the first place—and require its denial if filed"). Therefore, although we find that there was a violation of the automatic stay, we find neither willfulness nor malice in that action, and affirm Judge Berk's June 28, 2000 order.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss plaintiff's Amended Complaint is granted, all of plaintiff's claims are dismissed with prejudice and Bankruptcy Judge Berk's June 28, 2000 order dismissing plaintiff's adversary proceeding complaint is affirmed.

**SO ORDERED.**