In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1914

IN RE:

MAURICE J. SALEM,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 7823—**Blanche M. Manning**, *Judge.*

ARGUED MAY 2, 2006—DECIDED OCTOBER 10, 2006

Before CUDAHY, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This longstanding family dispute about the ownership of a rental house has spawned years of litigation in both this circuit and the Second, occupying innumerable hours of bankruptcy, district, and circuit court time. At this point, the question is simple: did the bankruptcy court for the Northern District of Illinois err when it dismissed the petition of Maurice J. Salem, the debtor, or when it made various rulings in conjunction with the case? Defending the court's judgment is Michael Neshewat, the creditor and brother of Salem. We conclude, as did the district court before us, that the bankruptcy court's actions were correct, and we therefore affirm.[1]

---

[1] We note that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005)

**I**

Briefly put, the current bankruptcy proceeding arose out of litigation between the brothers that took place in the state courts of New York. In 1999, Neshewat obtained a state-court judgment in the amount of $166,884.86 against his brother; that judgment was recorded against a rental house Salem owned located at 7 Gellatly Drive, Wappinger Falls, New York. Salem responded with a Chapter 7 bankruptcy petition in New York in 2000, the adjudication of which involved two appeals to the Southern District of New York and the Court of Appeals for the Second Circuit. One outcome of those proceedings was a holding that Neshewat's judgment against Salem is nondischargeable. See *In re Salem*, 290 B.R. 479, 485-86 (S.D.N.Y. 2003), *aff'd* 94 Fed. Appx. 24 (2d Cir. 2004) (unpublished).

Following the termination of his Chapter 7 petition in New York, Salem, now identifying himself as an Illinois resident, filed a Chapter 13 petition in the Northern District of Illinois. The plan he offered was a "zero percent plan" that made no provision for payments to unsecured creditors and treated Neshewat's judgment as unsecured. Neshewat objected, claiming that Salem had sufficient equity in the Gellatly Drive house to permit Neshewat's judgment to attach to it, thereby making the claim secured but unaccounted for in the plan. Within the Chapter 13 petition proceedings, Salem filed a motion to "convert" his Chapter 7 petition from New York into his Illinois Chapter 13 case, which the bankruptcy court denied. Then, in a separate decision months later, the bankruptcy court found that the house had sufficient value to make Neshewat's

---

[1] (...continued)
(BAPCPA), was enacted April 20, 2005, and took effect after the events in this case. See BAPCPA § 1501 (provisions apply 180 days after enactment).

claim secured. It therefore rejected the Chapter 13 plan for failing to account for the secured claim and dismissed the case. We explain more about the progression of this case below, as needed.

## II

Before proceeding to the merits, we must address a question of appellate jurisdiction noticed by the panel. See *Doctor's Assocs., Inc. v. Duree*, 375 F.3d 618, 621-22 (7th Cir. 2004); *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir. 1998). This court has jurisdiction over appeals from final judgments of the district courts. 28 U.S.C. § 1291. In the bankruptcy context, "[t]he general rule is that a court of appeals has jurisdiction over a bankruptcy appeal only if the bankruptcy court's original order and the district court's order reviewing the bankruptcy court's original order are both final." *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000). A judgment affirming a bankruptcy court's decision to deny confirmation of a Chapter 13 plan and dismiss a case is typically a final order of the bankruptcy court, as there are no proceedings left to occur. However, procedural oddities within this case might lead one to think that this appeal comes too late. We therefore explain here why we have concluded that the judgment issued March 30, 2005, by the district court is final.

We begin with the New York cases; we take judicial notice of these dockets and opinions. See, *e.g.*, *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) (taking judicial notice of administrative findings); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.")

On April 12, 1999, Salem filed an action under 42 U.S.C. §§ 1983 and 1985 against several defendants, including

Neshewat; Neshewat's attorney, Paul Goldstein; and named public officials. Salem's basic contention was that these individuals abused the judicial process in the litigation resolved by the default judgment that led in turn to the lien on the Gellatly Drive house. Salem separately filed a Chapter 7 petition in the Southern District of New York on February 23, 2000. On May 2, 2000, Salem filed an adversary proceeding complaint as part of his bankruptcy case, seeking injunctive relief and damages. See *Salem v. Paroli*, 260 B.R. 246, 252 (S.D.N.Y. 2001). The bankruptcy court dismissed the adversary complaint. After Salem appealed to the district court, the court consolidated the bankruptcy case with the civil rights suit. It affirmed the bankruptcy court's decision, *id.* at 256-57, and dismissed the civil rights claim under the *Rooker-Feldman* doctrine, which divests federal district and appellate courts of subject matter jurisdiction over a case if the result of the case could be the reversal or modification of a state court judgment, *id.* at 253-55. Salem appealed, and the Second Circuit affirmed. 79 Fed. Appx. 455 (2d Cir. 2003) (unpublished). Meanwhile, the Chapter 7 petition continued, and the bankruptcy court held on August 8, 2002, that Neshewat's default judgment was not dischargeable. The district court affirmed on March 5, 2003, see 290 B.R. at 485-86, and the Second Circuit affirmed on April 8, 2004, see 94 Fed. Appx. 24. The mandate issued May 4, 2004, and was received by the district court on May 11, 2004. According to the bankruptcy court's docket, that court took no action after March 11, 2003, when the case closed, and March 13, 2003, when a final decree issued.

While Salem's second appeal was pending before the Second Circuit, his wife Clodia filed a Chapter 7 petition in the Northern District of Illinois, which was docketed at No. 03-25681 and assigned to Bankruptcy Judge Sonderby. Salem, who is an attorney, represented his wife. The dispute in that case also related to whether the property on

Gellatly Drive would be sold. In the adjudication of Clodia's petition, the bankruptcy court ordered the property auctioned off.

In the meantime, in November 2002, Neshewat sued Salem in the Supreme Court of New York seeking to set aside as fraudulent Salem's conveyance of a half-interest in the Gellatly Drive house and a car to his wife. Salem removed that case to federal court, and it was stayed during the proceedings of the bankruptcy court in Illinois in both Salems' cases. On April 8, 2005, the district court for the Southern District of New York noted that although the court in Clodia's Illinois bankruptcy case ordered the sale of her interest in the Gellatly Drive house, it never addressed whether the conveyances were fraudulent and thus whether she had any interest. The New York district court held that the conveyances were indeed fraudulent. *Neshewat v. Salem*, 365 F. Supp. 2d 508, 518-21 (S.D.N.Y. 2005). The appeal of that decision is pending before the Second Circuit. The court also sanctioned Salem for engaging in frivolous litigation, enjoining him "from filing or prosecuting, without leave of this Court, further actions or proceedings in the federal courts against Neshewat or his counsel . . . seeking review of or relief from the default judgment entered against him in New York State Supreme Court."

The sale of the real property itself (as opposed to particular interests in it) never took place because of Salem's own Chapter 13 petition, which he filed in Chicago the day after the district court in New York received the mandate from the Second Circuit affirming dismissal of his Chapter 7 petition. (We note in passing that although it appears that Salem was cutting it close, he did not pursue relief under Chapter 7 and Chapter 13 simultaneously in his New York and Illinois petitions. When a Chapter 13 petition is filed after a Chapter 7 petition, it has been nicknamed a Chapter 20 filing. See generally *Johnson v. Home State Bank*, 501

U.S. 78 (1991) (permitting a Chapter 13 filing after a Chapter 7 case had closed). Salem's petitions did not overlap, but rather were (barely) successive. "Simultaneous" Chapter 20 petitions are barred in this Circuit, see *In re Sidebottom*, 430 F.3d 893, 895 (7th Cir. 2005).) On May 12, 2004, Salem's Chapter 13 petition was docketed as Case No. 04 B 18739. Salem paid the docketing fee, then $194, for a Chapter 13 petition. In addition to new Chapter 13 petition, Salem filed a separate motion to "convert" his closed New York Chapter 7 proceeding into the Illinois Chapter 13 proceeding. When Salem's petition was filed, it was assigned to Judge Sonderby, probably because of Bankruptcy Local Rule 1015.1A(1), which provides that "[t]wo or more cases are related if . . . the debtors are husband and wife."

On June 16, 2004, Judge Sonderby denied the motion to convert the New York Chapter 7 petition into the case before her, reasoning that the New York case was both closed and not within her district. No notice of appeal was filed within 10 days of that order, nor was there a request for an interlocutory appeal filed with the district court at that time. See FED. R. BANKR. P. 8001, 8002, 8003. We consider the appealability of the denial of conversion separately below. Judge Sonderby did not dismiss the Chapter 13 petition or issue a final judgment at this point.

As the case proceeded, it appears to have been transferred for some reason, undocumented in the record, from Judge Sonderby to Chief Bankruptcy Judge Wedoff. Chief Judge Wedoff both conducted the hearing and issued the judgment of the bankruptcy court. Since neither party raised issues about the transfer (which appears to have caused some confusion from time to time), our only concern is to ensure that this was one singular case with one final order, rather than two separate cases—potentially, the conversion of the New York Chapter 7 (rejected by Judge Sonderby) and the filing of the Illinois Chapter 13 (rejected by Chief Judge

Wedoff). We conclude, based on a number of indicia in the record, that there has never been more than one case here. Salem paid only one filing fee; the case proceeded under only one case number; and the denial of Salem's motion to convert the Chapter 7 petition from New York into the Chapter 13 petition appears no different from a ruling on any other interlocutory motion. It follows from this conclusion that the bankruptcy court's December 1, 2004, order dismissing the case and denying confirmation of Salem's Chapter 13 plan was a final judgment. This triggered Salem's right to appeal to the district court under 28 U.S.C. § 158(a)(1). Similarly, the district court's order affirming the bankruptcy court's order was final, reflecting the termination of the bankruptcy case. With this predicate, our appellate jurisdiction over the case, which encompasses both challenges to the final judgment and challenges to various interlocutory orders, is also proper. See 28 U.S.C. § 158(d)(1).

## III

Salem argues that the bankruptcy court—and the district court in affirming it—made several errors in the handling of his Chapter 13 petition. We review legal issues in a bankruptcy case *de novo* and factual findings for clear error. See *In re Heartland Steel, Inc.*, 389 F.3d 741, 743-44 (7th Cir. 2004). Essentially, our review is the same as that performed by the district court. See *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004).

### A.  Chapter 7/Chapter 13 Conversion

### 1.  Jurisdiction

After filing his initial Chapter 13 petition before the bankruptcy court in the Northern District of Illinois, Salem

filed a motion to convert his Chapter 7 petition from New York into the Chapter 13 petition in Illinois pursuant to 11 U.S.C. § 706(a). (This is Salem's terminology; we do not wish to be understood as endorsing the idea that "conversion" is the right word to use for a request (1) to transfer a case from one bankruptcy court to another, and then (2) to convert the case from Chapter 7 to Chapter 13. We are merely reporting what it is that Salem asked the bankruptcy court in Chicago to do.) At a hearing on the motion, Judge Sonderby questioned how the bankruptcy court could have jurisdiction over "a closed New York case." Before anyone could think of converting, she held, the Chapter 7 case had to be "an open, pending, viable case in this district." Arguing that the bankruptcy court erred, Salem takes the extreme position that a debtor has an absolute right to convert a Chapter 7 petition to a Chapter 13 petition at any time, even after the Chapter 7 proceeding is closed, and even though it is not just in another district, but is in another state and another circuit.

Before we can reach the merits of this issue, we must decide whether it is properly before this court; that in turn depends on whether it was properly before the district court. "A court of appeals' jurisdiction over a district court's review of a bankruptcy court order can only be based on a proper exercise of the district court's jurisdiction. Whether the district court had jurisdiction over any particular matter is a question of law, reviewable *de novo*." *In re Vlasek*, 325 F.3d 955, 960 (7th Cir. 2003) (internal citations omitted).

Neshewat argues that Salem forfeited the right to appeal this issue to the district court and consequently to this court when he did not file a notice of appeal within 10 days of Judge Sonderby's order rejecting his "conversion"— a move he thinks was required by Federal Rule of Bankruptcy Procedure 8002. In the proper circumstances, this rule is more than merely procedural; it is jurisdictional. See

*In re Bond*, 254 F.3d 669, 673 (7th Cir. 2001). If, for example, Salem had failed to file a notice of appeal within 10 days of the final order dismissing the petition, and he could not show "excusable neglect," then the district court would have had no power to hear Salem's appeal. See FED. R. BANKR. P. 8002(c)(2) (permitting short extension of time for "excusable neglect"). See also *Matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 689 (7th Cir. 1992) (finding no district court jurisdiction in the absence of a timely notice of appeal from the bankruptcy court).

But the order refusing to convert the Chapter 7 proceedings from New York into the Chapter 13 proceedings in Illinois was not a final order. It did not bring the Illinois Chapter 13 petition to an end; virtually the entire dispute remained, involving the same parties and the same issues. Even though the concept of finality is relaxed in the bankruptcy context, see *In re Jartran, Inc.*, 886 F.2d 859, 861-62 (7th Cir. 1989), this order was interlocutory in the purest sense of the word. See *Caldwell-Baker Co. v. Parsons*, 392 F.3d 886, 888 (7th Cir. 2004) (holding that, where an adversary proceeding continues, "[t]he order . . . is no more a 'final decision' than an order denying summary judgment or denying a request for additional discovery; the litigation proceeds and the issue will be reviewed if it turns out to make a difference to an order that is independently appealable"). See also *In re Young*, 237 F.3d 1168, 1172-73 (10th Cir. 2001) (holding that the conversion of a Chapter 7 petition to a Chapter 13 petition was not final until the plan itself was approved); *Matter of Kutner*, 656 F.2d 1107, 1111-12 (5th Cir. 1981) (holding that an order striking a standing trustee's motion to convert a Chapter 13 petition to a Chapter 7 is interlocutory, not final). Normally, a party does not have an absolute right to take an interlocutory appeal from the bankruptcy court. (There are limited exceptions, but they do not apply here. See 28 U.S.C. § 158(a)(2).) Instead, the party must seek the leave of the district court. See 28 U.S.C. § 158(a)(3).

The question here is whether the failure to file a notice and to seek leave to file an interlocutory appeal, as required by Federal Rules of Bankruptcy Procedure 8001-03, also prevents a district court from addressing the interlocutory order upon final appeal, when a proper notice of appeal was filed following the final judgment of the bankruptcy court. As a general rule, the failure to file an interlocutory appeal does not waive the ability to have an issue reviewed upon final appeal. See *Rivera-Domenech v. Calvesbert Law Offices PSC*, 402 F.3d 246, 249 n.2 (1st Cir. 2005); *National Union Elec. Corp. v. Wilson*, 434 F.2d 986, 988 (6th Cir. 1970). To the contrary, one of the purposes of the final judgment rule is to permit consolidated review of all interlocutory decisions that still matter. One reason for denying permission to take an interlocutory appeal, or for passing up the opportunity to ask for such an appeal, is because many issues may be effectively reviewed on final appeal. See *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 547 (7th Cir. 1985).

This court took exactly that tack in *Vlasek*, 325 F.3d at 960-61. On April 30, 1999, the bankruptcy court issued an order refusing to dismiss Vlasek's petition; later, on May 25, 2001, the court issued another order closing the estate and discharging the Trustee. Vlasek filed a notice of appeal from the latter order, and on appeal he sought (apparently for the first time) to challenge the earlier order. The Trustee argued that the April 30, 1999, order was "final" and therefore that the notice of appeal was untimely as it related to that order. In deciding the case, we reasoned that "denials of motions to dismiss are generally not final orders even in the bankruptcy context." *Id.* at 960 (quoting *Jartran*, 886 F.3d at 864). Since the order was not final, there was no appeal as of right to the district court pursuant to 28 U.S.C. § 158(a). Although we eventually found that most of Vlasek's appeal was moot for other reasons, the notice of appeal from the May 25, 2001, order was sufficient

to bring the entire case before the district court, and then this court.

Furthermore, although we note that Salem's notice of appeal to the district court identified only the December 1, 2004, order dismissing the case and not the earlier order refusing conversion, we conclude that the conversion issue was properly before the district court. A notice of appeal under Rule 8001(a) of the bankruptcy rules must "(1) conform substantially to the appropriate Official Form, [and] (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys." In *Fadayiro v. Ameriquest Mortgage Co.*, 371 F.3d 920 (7th Cir. 2004), we observed that the reference in that rule was "to Official Bankruptcy Form 17, which . . . has spaces for the docket number of the case, what chapter of the Bankruptcy Code the case involves, and the date of entry of the order being appealed from." *Id.* at 922. We went on to speculate, "We are doubtful that a notice of appeal that failed to indicate the order appealed from could nonetheless be thought to comply with the rule, . . . for how could a notice that omitted such essential information be thought to 'conform substantially' to the official form?" *Id.* (internal citation omitted).

That, however, is not this case. The particular order appealed from—the final order of December 1, 2004—was identified in Salem's notice of appeal. The purpose of identifying the order appealed from is so that the courts reviewing the case can determine whether, for example, the appellant met the 10-day deadline of Rule 8002 and whether the order is final (permitting appeal as of right) or interlocutory (potentially requiring leave of court). Salem was not required in that notice to identify every earlier decision, including the evidentiary and discovery rulings we discuss below, that he wanted to challenge. His notice of appeal was adequate.

2. Merits

The bankruptcy code provides for the conversion of a Chapter 7 petition to a Chapter 11, 12, or 13 petition "at any time"; it also says that a waiver of that right is "unenforceable." 11 U.S.C. § 706(a). Salem understands this language literally: "any time" means *any* time, in his view, no matter what judicial actions have occurred, and thus the district court erred in upholding the denial of his motion to convert. Unfortunately, matters are not quite that simple. Indeed, the Supreme Court recently granted certiorari in *In re Marrama*, 430 F.3d 474 (1st Cir. 2005), *cert. granted* 126 S. Ct. 2859 (June 12, 2006), to decide "whether the right to convert a chapter 7 bankruptcy case to another chapter can be denied notwithstanding the plain language of the statute and the legislative history." 2006 WL 295220 (petition for *certiorari* filed Jan. 30, 2006). The First Circuit in *Marrama* found that "at any time" meant "simply [ ] that the debtor may seek to convert *at any time during the pendency of the bankruptcy case*" and that the statute does not prevent a court from refusing to convert based on the debtor's own "willful misconduct, such as an intentional abuse of the bankruptcy process." 430 F.3d at 479 (emphasis added). See also *In re Finney*, 992 F.2d 43, 45 (4th Cir. 1993) (holding that bad faith in a § 706(a) conversion permits the court to consider *sua sponte* whether the petitioner engaged in abuse of process under 11 U.S.C. § 105(a)). In contrast, a bankruptcy appellate panel for the Tenth Circuit and the Fifth Circuit have both held that the right to convert is absolute and may be exercised even after the debtor received a discharge under Chapter 7. See generally *In re Miller*, 303 B.R. 471 (10th Cir. BAP 2003); *In re Pequeno,* 126 Fed. Appx. 158 (5th Cir. 2005) (unpublished).

Fortunately, we need not choose sides in this circuit split nor await the Supreme Court's resolution in order to resolve this appeal. Regardless of whether conversion may occur "at any time" without any exceptions for bad behavior or other

circumstances, it is clear that the conversion cannot occur in a district other than the one where the case is pending without a proper transfer under 28 U.S.C. § 1412. Salem admits that he never sought to transfer his Chapter 7 case from the bankruptcy court in New York to the Northern District of Illinois. Federal Rule of Bankruptcy Procedure 1014(b) provides specific transfer procedures that apply when two petitions involving the same debtor are filed in different courts. In such cases, "on motion filed in the district in which the petition filed *first* is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed" (emphasis added). This rule suggests that Salem should have requested a transfer from the Southern District of New York. The fact that the case there was finished one day before this one was filed does not relieve him of that obligation. Since he chose not to file a motion before either court to transfer the two petitions to the same venue, there was nothing related to the Chapter 7 case properly before the bankruptcy court in Illinois upon which it could have acted. See also FED. R. BANKR. P. 1015(a) ("If two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases.").

### B. Trial Rulings

We need not tarry on Salem's remaining points, all of which relate to the bankruptcy court's management of the case. For the reasons we explain briefly below, the court did not abuse its discretion nor did it make any errors of law in the course of the proceedings.

1.  Expert Appraisal Testimony

The bankruptcy court permitted Neshewat's expert appraiser to testify over Salem's objection. In passing, the court commented that the principles from *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), apply "with less force in the context of a bench trial" and reasoned, "I can accept the evidence. And if I find that it's not well grounded by experience and expertise in the witness, I can ignore that. The gatekeeping function that *Daubert* talks about is most pointedly at issue in a jury trial where a jury might be misled by an expert who doesn't have sufficient qualifications."

Salem seizes on this remark and urges us to find that the court erred as a matter of law by failing to hold the expert to the standards codified in Federal Rule of Evidence 702 and by finding those standards inapplicable to a bench trial. He also contends that for the proffered expert to be an expert in evaluating the worth of a property the expert necessarily must have expertise in making or estimating the cost of repairs because, in his view, the value of the house is significantly reduced because of the need for extensive repairs.

Salem's argument misses the bankruptcy court's point. It is not that evidence may be less reliable during a bench trial; it is that the court's gatekeeping role is necessarily different. Where the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened. See *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005). That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence

subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

We see no error in the court's conclusion that Neshewat's expert was entitled to present his testimony. He testified that he had been certified by the State of New York as an appraiser for 15 years, that he specialized in residential appraisals, and that he had performed more than 4,000 appraisals, the majority of which were in the same county as the Gellatly Drive house. The purpose of an appraisal is to determine the market value of the existing house, after all, not to determine how much it would cost to change it, either by repairs or otherwise. Many properties are sold in which the appraisal is tied wholly to the value of the land itself, where it is expected that the building on the property will be demolished. Furthermore, the bankruptcy court is quite capable of separating out what the witness is an expert in and what he is not. The testimony on the market value of the house was important for determining the amount of Salem's equity in the house. This case is light years away from *Ancho v. Pentek Corp.*, 157 F.3d 512 (7th Cir. 1998), in which the district court properly excluded a mechanical engineer's expert testimony from a case about an accident in a plant involving moving conveyer belts. There, the engineer possessed "no expertise in plant design and [ ] he had failed to observe the transfer car in operation, much less even take the time to visit the accident site." *Id.* at 516. In this case, the expert appraiser was experienced, had visited the house twice, made appraisals on the standard form used by Fannie Mae, and had used quantitative sales comparison analysis to help determine the market value of the house. The bankruptcy court was well within bounds to permit this testimony.

2. Discovery

Salem also argues that the bankruptcy court erred in denying his motion seeking to exclude Neshewat's evidence on the basis that Neshewat failed to exchange witness lists and exhibits by November 24, 2004, and to file witness and exhibit lists with the court, as required by the amended trial order. He contends that this prejudiced him by not permitting him to impeach the appraiser.

In order to prevail, Salem must show both that the bankruptcy court abused its discretion, *Sims v. GC Services L.P.,* 445 F.3d 959, 963 (7th Cir. 2006), and that the ruling worked "to his actual and substantial prejudice," *Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 334 (7th Cir. 2005). He has done neither. The bankruptcy court had a concrete problem to address, and it adopted a reasonable solution. Salem claimed that he never received the appraisals and other documents and that he did not have the expert witness's name so as to be able to investigate him. Neshewat pointed out that the same appraiser was used for two appraisals, one in February and one in October, that the appraiser's name was given to Salem so that the appraiser could access the house, and that the appraisals were timely tendered. The other exhibits Neshewat wanted to use were Salem's own schedules and plans from the bankruptcy proceedings in both Illinois and New York. Neshewat also proffered a fax transmission sheet as proof that he had complied with the bankruptcy court's order to exchange exhibits by November 24.

The bankruptcy court docket confirms that Neshewat filed a list of witnesses on November 24, 2004, that was modified on November 29, 2004, to include exhibits. Salem's complaint about his purported lack of knowledge about the identity of the expert rings hollow, because the witness list was filed when it was due. Moreover, given that Neshewat used the same expert to perform both appraisals and

arranged for him to be given access to the house in October 2004, Salem had some familiarity with the expert and could not have been prejudiced as his identity was not a surprise.

Even if Salem might have preferred a different course of proceedings, he has not shown prejudice from any of the judge's decisions. The trial transcript demonstrates that Neshewat proffered only two significant exhibits—the two appraisals by his expert, which were on standard forms. This is not a case with thousands of pages of evidence. Salem says that with more time he would have had his own appraiser review the appraisals, but he proffers no evidence indicating that they have done so and found them to be flawed. He cross-examined the witness on the appraisals and the differences between them and on the appraiser's lack of expertise regarding repairs. The only limitation placed on the cross-examination came when Salem engaged in what can only be described as a classic fishing expedition, in an attempt to link the expert to various people who, he alleges, conspired against him in New York. Any trial court would be well within its discretion to put an end to such a line of questioning. The bankruptcy court did not abuse its discretion in its management of the discovery process.

### 3.  Exclusion of Two Documents

Salem argues that the bankruptcy court erred by excluding two documents: a 1992 complaint against the builder of the house, and a decision by a state court dismissing that complaint. The bankruptcy court found this evidence irrelevant: "What happened in your litigation with the developer is not important. The question is what the condition of the house is right now, regardless of who was responsible for it." Salem thinks that the evidence would have bolstered his own testimony about the defects and thus the absence of value in the house. We review the

exclusion of evidence for an abuse of discretion. *Goodman v. Ill. Dept. of Financial and Professional Regulation*, 430 F.3d 432, 438-39 (7th Cir. 2005). This evidence, at most, sheds light on the condition of the house prior to 1992. The court had before it the more recent appraisals of two different experts as well as testimony about the condition of the house. The excluded documents were quite unnecessary.

### 4.  Burden of Proof/Ultimate Valuation

The bankruptcy court held that the debtor in a Chapter 13 case "has the burden of establishing each of the elements for confirmation of a plan and if there is an objection, it puts the debtor to his proof of each of those elements." The bankruptcy court also ultimately held that Salem had equity in the property, which meant that Neshewat's default judgment from New York was secured rather than unsecured. Salem argues that the bankruptcy court erred by placing the burden of proof on him to prove an absence of equity in the house. Instead, he contends, Neshewat should have been required to produce some evidence before the burden of proof shifts back to him. He also argues that the court clearly erred in its ultimate conclusion on the value of the house.

The allocation of the burden of proof has been the subject of some debate. Federal Rule of Bankruptcy Procedure 3001(f) makes a proper proof of claim with the accompanying documents "prima facie evidence of the validity and amount of the claim." The Supreme Court observed in *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000), that "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Id.* at 21. "The legislative history indicates that the burden of proof on the issue of establishing claims was left to the Rules

of Bankruptcy Procedure." *Id.* at 22 n.2. The Court observed that the rules are "silent on the burden of proof for claims"; although Rule 3001(f) provides that the claim itself is *prima facie* evidence, the Rules are silent as to what to do when a trustee, or in this case the debtor, "disputes a claim." *Id.* This open question has two obvious potential answers. One is that the submission of the claim itself, with proper supporting documentation, shifts the burden of production to the debtor to provide evidence why the claim is invalid, leaving the burden of persuasion with the creditor. The alternate is that once the claim is filed, both the burdens of production and persuasion shift to the debtor.

Interesting though the question may be, we need not resolve it here, because in the end it makes no difference. Either way, the bankruptcy court did not clearly err in finding equity in the Gellatly Drive house. See, *e.g.*, *In re Schoonover*, 331 F.3d 575, 577 (7th Cir. 2003). With his initial objection, Neshewat produced records showing that the judgment was attached to this house, as well as evidence about the value of the house including Salem's own bankruptcy schedule valuing the house at $170,000. Thus, under Rule 3001(f), Neshewat made a *prima facie* case. Then, at the hearing, Neshewat presented the expert testimony of his appraiser, while Salem presented his. The court evaluated all the testimony before coming to an ultimate valuation. Its conclusion, in turn, established that Neshewat's judgment was secured.

**IV**

This court on April 8, 2005, granted a stay of the bankruptcy court's order dismissing this case. We now AFFIRM the judgment of the district court affirming the dismissal of the petition by the bankruptcy court. We also VACATE the stay to permit the bankruptcy court's dismissal to take effect.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*