**Michael NESHEWAT, Plaintiff,**

v.

**Maurice J. SALEM f/k/a Maurice J. Neshewat and Clodia A. Salem, Defendants.**

**No. 02 CIV. 9807(WCC).**

United States District Court, S.D. New York.

April 8, 2005.

Goldsten & Metzger, LLP, Poughkeepsie, NY (Paul J. Goldstein, of Counsel), for Plaintiff.

Maurice J. Salem, pro se.

Maurice J. Salem, Palos Heights, IL (Maurice J. Salem, of Counsel), for Clodia A. Salem, and Paragon Associates of New York, Inc.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Michael Neshewat commenced this action against defendants Maurice J. Salem ("Salem" or the "defendant") and his wife Clodia Salem (collectively, the "defendants") seeking to set aside: (1) the conveyance by Salem (f/k/a Maurice J. Neshewat) of residential property at 7 Gellatly Drive in Wappingers Falls, New York to himself and Clodia Salem, on May 20, 1999; and (2) Salem's conveyance of a 1989 Model 300 Mercedes Benz to Clodia Salem.[1] In addition, plaintiff seeks attorney's fees pursuant to section 276–a of the New York State Debtor and Creditor Law. In the present motion, plaintiff moves for summary judgment pursuant to FED. R. CIV. P. 56 on the fraudulent conveyance claims and for dismissal of defendant's counterclaim[2] against plaintiff for failure to state a claim upon which relief may be granted and on the basis of *res judicata*, collateral estoppel and the statute of limitations. In addition, plaintiff seeks monetary sanctions for frivolous conduct and an injunction to prevent defendants from commencing any further actions against plaintiff or his counsel, Paul J. Goldstein and Goldstein & Metzger, LLP. Defendant cross-moves to amend his counterclaim to: (1) plead specific facts underlying the claim based on N.Y. C.P.L.R. § 5015(a)(3); (2) include a claim of common law fraud on the court; and (3) include opposing counsel, Paul J. Goldstein, as a third-party

---

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332; the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

2. Defendant filed a counterclaim pursuant to N.Y. C.P.L.R. § 5015(a)(3) & (d) seeking to set aside a default judgment entered against him, which is the judgment plaintiff is seeking to enforce in the instant fraudulent conveyance action.

defendant pursuant to N.Y. C.P.L.R. § 1007.

Additionally, the parties seek the Court's assistance with respect to: (1) plaintiff's service of a "Restraining Notice to Garnishee" on a temporary tenant of the subject house, seeking to prevent or suspend rental payments to the owners of the house;[3] and (2) the impending April 13, 2005 Sheriff's sale of the premises. Defendant maintains that, as a matter of law, plaintiff cannot restrain the tenant from paying rent under N.Y. C.P.L.R. § 5222(b) and moves for an order quashing the restraining notice. In addition, Paragon Associates of New York, Inc. ("Paragon"), a nonparty adverse claimant, moves, pursuant to FED. R. CIV. P. 24(a)(2) and N.Y. C.P.L.R. §§ 5239 and 5227, for an order allowing it to intervene in this proceeding to determine its rights to the property.[4]

For the reasons stated hereinafter, plaintiff's motion for summary judgment is granted with respect to setting aside the fraudulent conveyances, but denied with respect to the imposition of attorney's fees. Plaintiff's motion to dismiss defendant's counterclaim is also granted, and defendant's motion to amend the counterclaim is denied.

Additionally, Paragon's motion to intervene is denied. Defendant's motion to quash plaintiff's "Restraining Notice to Garnishee" and plaintiff's cross-motion seeking an order that the rental payments generated from the 7 Gellatly Drive property be turned over to plaintiff are both granted in part and denied in part. In addition, defendant's motion seeking to maintain the status quo and stay the scheduled Sheriff's sale is denied. Lastly, plaintiff's motion for sanctions and injunctive relief is granted with respect to enjoining Salem from commencing further litigation in connection with the default judgment entered against him in New York State Supreme Court.

## BACKGROUND

This lawsuit is one of many between the two brothers Salem and Neshewat. In 1996, Neshewat filed an action in New York State Court against Salem for malicious prosecution, abuse of process, defamation, libel and slander. (Pl. Mem. Supp. Summ. J. at 4.) A default judgment was entered against Salem. After a damages inquest, the state court awarded damages in the amount of $166,884.86 and a judgment was entered for that amount in the Dutchess County Clerk's Office on June 16, 1999. (*Id.*)

On April 12, 1999, defendant commenced an action in the United States District Court for the Southern District of New York, against plaintiff Michael Neshewat; his attorney, Paul J. Goldstein; Judge Pagones, who conducted the inquest; and various other officials. (*Id.* at 5.) Defendant's lawsuit, *inter alia*, challenged Judge Pagones's authority to enter the default judgment against defendant, alleging that the judgment was entered based on false and fraudulent statements made to Judge Bernhard. (*Id.*) In a previous decision by this Court, that action was dismissed and the dismissal was affirmed by the Second Circuit. *Salem v. Paroli*, 260 B.R. 246 (S.D.N.Y.2001) (Conner, J.); *Salem v. Paroli*, 79 Fed. Appx. 455 (2d Cir.2003).

---

**3.** Plaintiff served the restraining notice pursuant to N.Y. C.P.L.R. § 5222(b).

**4.** Paragon bought Clodia Salem's one-half interest in the 7 Gellatly Drive property by quitclaim deed after an Illinois Bankruptcy Court ordered that her interest be sold in a public auction. The deed explicitly states that the property interest is "subject to all existing liens, claims, mortgages, encumbrances and claims of exemption."

Salem filed for bankruptcy in 2000 and later that year Neshewat commenced an adversary proceeding in bankruptcy court seeking a determination that the judgment against Salem was a non-dischargeable debt. (*Id.* at 6.) The bankruptcy court conducted a trial and found that Neshewat had proven by a preponderance of the evidence that Salem caused willful and malicious injury to him, and therefore concluded that the debt was non-dischargeable. *See In re Salem*, 290 B.R. 479 (S.D.N.Y.2003) (Conner, J.). Salem then appealed to this Court, which had jurisdiction pursuant to 28 U.S.C. § 158. In an Opinion and Order dated March 5, 2003, we affirmed the bankruptcy court's determination that Salem's debt was non-dischargeable. *Id.* This decision was affirmed by the Second Circuit Court of Appeals. *In re Salem*, 94 Fed. Appx. 24 (2d Cir.2004).

With the intention of enforcing his right as a judgment creditor, plaintiff commenced the instant action in the Supreme Court of the State of New York, County of Dutchess, on November 20, 2002, seeking to set aside two conveyances made by Salem. (Pl. Mem. Supp. Summ. J. at 1.) Plaintiff alleges that defendant fraudulently conveyed his interest in the real property at 7 Gellatly Drive to himself and his wife on May 20, 1999 and fraudulently conveyed a 1989 Model 300 Mercedes Benz, which was in his name alone, to his wife on July 23, 1999. (*Id.* at 7.) According to plaintiff, the conveyance of the real property "was done immediately after Justice Pagones had rendered his decision and order on May 7, 1999, granting judgment in the sum of $131,622.91, and before the actual judgment, which with costs, disbursements and interest, totaled $166,884.86, was entered on June 16, 1999, in the Dutchess County Clerk's Office." (*Id.*) Plaintiff seeks to "set aside the conveyances to Salem's wife and return them to their pre-conveyance status; that is, ownership in Salem's name, so that the judgment can be enforced directly against him." (*Id.* at 8.)

Defendants removed this action to federal court on December 12, 2002 and also served a Verified Answer and counterclaim. (*Id.* at 2.) The counterclaim seeks to set aside the $166,884.86 default judgment entered against defendant, which is the judgment plaintiff is now seeking to enforce in the present fraudulent conveyance action. Defendant maintains that the default judgment entered on November 6, 1996 by Judge George G. Bernhard, Acting Justice of the Supreme Court, County of Dutchess, was entered because of false and fraudulent statements made by plaintiff and plaintiff's counsel. (*Id.*)

This action was placed on the suspense calendar by this Court on November 24, 2003 because each defendant, individually, had filed bankruptcy petitions in Illinois. (*Id.*) The bankruptcy matters having been resolved, this Court reinstated the action and removed it from the suspense docket on December 15, 2004. Shortly thereafter, the present motions were filed.

## DISCUSSION

### I. *Motion to Dismiss Counterclaim*

We will address the issues surrounding defendant's counterclaim first because our determination with respect to the counterclaim has a direct bearing on the analysis of plaintiff's claims and requests for relief from the Court.

### A. *Motion to Dismiss Standard*

On a motion to dismiss pursuant to Rule 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90

(1974), *overruled on other grounds; Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A counterclaim should not be dismissed for failure to state a claim "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). All well-pleaded factual allegations will be accepted as true and all reasonable inferences must be drawn in favor of the claimant. *See Wright v. Ernst & Young LLP,* 152 F.3d 169 (2d Cir.1998); *In re AES Corp. Secs. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances on which plaintiff relies, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

## B. *Defendant's Counterclaim*

Defendant filed a counterclaim in the instant action pursuant to N.Y. C.P.L.R. § 5015(a)(3) & (d) seeking vacatur of the default judgment entered against him in New York State Supreme Court and restitution. (Defs. Affm. # 2 ¶ 2.) The counterclaim alleges that the default judgment was obtained by fraud and other misconduct on the part of plaintiff. *(Id.)* In addition, defendant moves to amend his counterclaim to: (1) plead specific facts supporting the claim under C.P.L.R § 5015(a)(3); (2) include a claim of common law fraud on the court; and (3) add opposing counsel, Paul J. Goldstein, as a third-party defendant pursuant to C.P.L.R. § 1007. *(Id.)*

### 1. *Motion to Amend Counterclaim*

Where, as here, a responsive pleading has been filed, Rule 15(a) allows a party to amend its pleading "only by leave of court or by written consent of the adverse party." However the rule mandates that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Accordingly, the Supreme Court has ruled that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should ... be freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 The Second Circuit and this Court have interpreted the *Foman* standard to allow amendments, even if there was substantial delay in seeking the same, unless the movant has acted in bad faith, the amendment will prejudice the nonmovant, or the amendment is futile. *See Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (noting that a motion to amend should be denied only for undue delay, bad faith, futility or prejudice to opposing party; mere delay alone, absent a showing of bad faith or prejudice, is not grounds for denial of leave to amend) (citations omitted); *Posadas de Mexico, S.A. de C.V. v. Dukes,* 757 F.Supp. 297, 300 (S.D.N.Y.1991) (Conner, J.) (recognizing that leave to amend should be given unless the motion for leave is the product of bad faith or dilatory motive, or amendment will prejudice adversary or be

**516**

futile). "In this Circuit, an amendment is considered futile if the amended pleading fails to state a claim, or would be subject to a motion to dismiss on some other basis." *Tri–State Judicial Servs., Inc., v. Markowitz,* 624 F.Supp. 925, 926 (E.D.N.Y.1985) (internal citations omitted). In evaluating futility, all well-pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. *See Savitsky v. Mazzella,* No. 98 Civ. 9051, 2004 WL 2454120, at *3 (S.D.N.Y. Nov.1, 2004) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). The decision of whether to grant leave to amend is within the sound discretion of the district court. *Foman,* 371 U.S. at 182, 83 S.Ct. 227.

In the present case, we deny defendant's motion for leave to amend the counterclaim because the proposed amendments would be futile. *See Ellis v. Chao,* 336 F.3d 114, 126 (2d Cir.2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile."). Even if we were to grant leave, defendant's proposed amendments would be dismissed for the same reasons as the counterclaim, as discussed *infra.* Furthermore, the proposed amendments would not alter this Court's conclusion that the counterclaim is barred by the doctrine of *res judicata.*

### C. *Dismissal of Counterclaim—Res Judicata*

■ The doctrine of *res judicata,* or claim preclusion, "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party ... and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." MOORE'S FEDERAL PRACTICE § 131.10[1][a] (3d ed.2003); *see also Waldman v. Vill. of Kiryas Joel,* 207 F.3d 105,

108 (2d Cir.2000). The doctrine was created to address the fundamental need of any judicial system for finality; "a claim ... which parties had a full and fair opportunity to litigate should, after judgment, forever be put to rest as between those parties." MOORE'S FEDERAL PRACTICE § 131.12[1] (citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). Whether the prior judgment was decided correctly is not relevant when determining whether the doctrine of *res judicata* bars the suit. *See Nemaizer v. Baker,* 793 F.2d 58, 64–66 (2d Cir.1986); *Lacy v. Principi,* 317 F.Supp.2d 444, 448 (S.D.N.Y.2004) (Conner, J.).

■ Under New York law, a final judgment on the merits must be recognized as *res judicata* to prevent a party from asserting claims that have been, or could have been, litigated in a prior action based upon the same facts. *See Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 429 N.E.2d 746, 445 N.Y.S.2d 68 (1981). New York applies a "transactional approach" and the doctrine of *res judicata* bars all claims based on the same facts notwithstanding variance of legal theory or requested relief. *Id.* Courts consider whether the party seeking dismissal has shown that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs [or claimants] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *See Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000).

■ It is clear that defendant's counterclaim is barred by *res judicata.* Defendant previously brought an action against plaintiff, *Salem v. Paroli Jr., Pagones, Goldstein & Neshewat.,* 260 B.R. 246 (Bkrtcy S.D.N.Y. 2001). In that case, defendant asked the Court to overturn the

state court $166,884.86 default judgment entered against him. *See Salem,* 260 B.R. at 254.[5] This is exactly the relief defendant is seeking in the present case, based on the same set of facts. Changing the legal theory upon which the request for relief is based does not bar the applicability of *res judicata.* Furthermore, the previous action involved an adjudication on the merits, involved both parties involved in the present action, and the claims asserted in this action were or could have been asserted in the prior action.

In addition, although defendant maintains that *res judicata* is not applicable in an action based on fraud, defendant offers no authority to support this proposition and we are aware of none. (Defs. Mem. Opp. Summ. J. at 4.) Defendant does, however, correctly point out that "under the doctrine of res judicata, an existing final judgment rendered on the merits, *without fraud or collusion,* by a court of competent jurisdiction, is conclusive of the causes of action litigated and all which could have been litigated." (*Id.* (emphasis in original).) However, defendant fails to recognize that his counterclaim is not barred by *res judicata* based on the default judgment that he alleges was obtained through fraud, but rather on the basis of the lawsuit he had previously brought seeking vacatur of the default judgment, *Salem v. Paroli,* 260 B.R. 246 (S.D.N.Y.2001), *aff'd,* 79 Fed. Appx. 455 (2d Cir.2003). In that prior lawsuit between the same parties, defendant sought vacatur of the default judgment entered against him in New York State Supreme Court on the ground of fraud. This Court entered a judgment dismissing that action and the judgment was affirmed by the Second Circuit. In the present counterclaim, defendant seeks identical relief on identical grounds, however differently he has attempted to frame the issue. Consequently, defendant's counterclaim is dismissed on the basis that it is barred by *res judicata.*

Moreover, defendant seeks relief pursuant to N.Y. C.P.L.R. § 5015; however, the statute explicitly provides that *"[t]he court which rendered a judgment or order* may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of: ... (3) fraud, misrepresentation, or other misconduct of an adverse party; or (4) lack of jurisdiction to render the judgment or order ...." N.Y. C.P.L.R. § 5015 (emphasis added). This Court is not the court which rendered the judgment defendant now seeks to have vacated. We cannot vacate the default judgment entered against defendant in New York State Court on the basis of N.Y. C.P.L.R. § 5015; such relief may be granted only by the court that entered the judgment. *See Brenner v. Arterial Plaza Inc.,* 29 A.D.2d 815, 287 N.Y.S.2d 308 (3d Dep't 1968); *Voccola v. Shilling,* 88 Misc.2d 103, 388 N.Y.S.2d 71 (N.Y.Sup.Ct. 1976); *Lintern v. Lintern,* 58 Misc.2d 335, 296 N.Y.S.2d 5 (N.Y.Co.Ct.1968).

Because defendant's counterclaim is dismissed in its entirety on the basis of *res judicata,* we need not address plaintiff's other arguments for dismissal of the counterclaim.

## II. *Summary Judgment*

### A. *Summary Judgment Standard*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson*

---

**5.** We denied plaintiff's request for an order setting aside the default judgment on the basis of the *Rooker–Feldman* doctrine. *Id.* This determination was affirmed by the Second Circuit. *See Salem v. Paroli,* 79 Fed.Appx. 455 (2d Cir.2003).

*v. Liberty Lobby,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

## B. *Fraudulent Conveyances*

Plaintiff moves for summary judgment with respect to his claim that defendant Salem fraudulently conveyed: (1) his house at 7 Gellatly Drive to himself and his wife; and (2) a 1989 Mercedes to his wife, to prevent collection of the default judgment entered against him in New York State Supreme Court and on his request for voiding of those conveyances pursuant to N.Y. Debt. & Cred. Law § 273–a. Plaintiff contends that there are no genuine issues as to any material fact so that summary judgment is appropriate. (Pl. Mem. Supp. Summ. J. at 15.) Defendant, however, contends that plaintiff's fraudulent con-

veyance claim is "moot" as it was decided in the Chapter 7 bankruptcy proceeding in Illinois and also that plaintiff's claim is not "ripe" because defendant never opposed any efforts to enforce the default judgment on the grounds that the property was in his name and his wife's name.[6] (Defs. Mem. Opp. Summ. J. at 8–10.) In the alternative, defendants maintain that there are genuine issues of material fact as to whether defendant Salem committed fraud by conveying the assets. (*Id.* at 10.)

■ Section 273–a of the New York Debtor and Creditor Law provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

"The purpose of 273–a is to provide a remedy for a creditor who has brought an action for money damages against a party who, after being named a defendant in that action, conveys assets to a third party for less than fair consideration leaving the ultimate judgment unpaid." *Cadle Co. v. Newhouse,* No. 01 Civ. 1777, 2002 WL 1888716, at *8 (S.D.N.Y. Aug. 16, 2002) (quoting *Sklaroff v. Rosenberg,* 125 F.Supp.2d 67, 74 (S.D.N.Y.2000)). To prevail on a § 273–a fraudulent conveyance claim, plaintiff must establish three elements: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has

---

**6.** Defendants assert that plaintiff's claim is "moot" and "not ripe"; however, we note that these characterizations are simply inac-curate. Nevertheless, we will address defendants' contentions accordingly.

been rendered against the transferor that remains unsatisfied. *Sklaroff*, 125 F.Supp.2d at 73 (citing *Lippe v. Bairnco Corp.*, 229 B.R. 598, 603 (S.D.N.Y.1999) (citations omitted); *Dixie Yarns, Inc. v. Forman*, 906 F.Supp. 929, 935 (S.D.N.Y. 1995)).

■ Before considering whether all three of these elements are present in this case, we must first dispose of defendants' contention that the Illinois Bankruptcy Court decided the issue of whether the transfer of the one-half property interest to Clodia Salem was a fraudulent conveyance. We agree with plaintiff that it did not. The Bankruptcy Order provided by Salem, which was unsigned and undated, but has a May 10, 2004 date stamp, merely authorized a bankruptcy trustee to conduct an auction sale of Clodia Salem's right, title and interest in the residence, whatever it might be. (Pl. Reply Aff. Supp. Summ. J. at 2.) The deed given by the trustee explicitly states that it is "subject to all existing liens, claims, mortgages, encumbrances and claims of exemption." (*Id.*) Consequently, defendants' contention is without merit and the fraudulent conveyance issue must be considered by this Court.

With respect to the three elements of a fraudulent conveyance claim under § 273–a, the second and third are clearly satisfied. At the time of the conveyance of the real property, Salem was a defendant in an action for money damages. Justice Pagones rendered a decision granting plaintiff judgment against Salem for $131,622.91, excluding interests and costs, on May 7, 1999, and defendant conveyed the one-half property interest to his wife on May 20, 1999. (Pl. Reply Aff. Supp. Summ. J. at 1.) Although this judgment had not yet been docketed, section 273–a only requires that the person making the conveyance be a defendant in an action for money damages, which Salem was. *See*

*Petersen v. Vallenzano*, 849 F.Supp. 228, 231 (S.D.N.Y.1994) (noting that "New York courts have applied § 273–a to conveyances which occurred before, during and after a judgment"). Furthermore, at the time of the conveyance of the automobile, Salem was a defendant in an action for money damages in which a judgment had been docketed against him. The conveyance of the automobile occurred on July 23, 1999, and the judgment was entered in the Dutchess County Clerk's Office on June 16, 1999. Consequently, the second requirement has been met for both conveyances. In addition, with respect to both conveyances, final judgment had been rendered against Salem in the amount of $166,884.86, and that entire amount still remains unsatisfied; thus, the third requirement has been met for both conveyances.

■ It remains to consider whether the conveyances were made without fair consideration. To be deemed "fair consideration" under New York's Debtor and Creditor Law, "the recipient of the debtor's property must either convey property or discharge an antecedent debt in exchange; ... the exchange must be for a fair equivalent; and ... the exchange must be 'in good faith.'" *In re Sharp Int'l Corp.*, 302 B.R. 760, 779 (E.D.N.Y.2003) (citing *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–59 (2d Cir.1995)); *see also Gasser v. Infanti Int'l, Inc.*, 353 F.Supp.2d 342, 354 (E.D.N.Y.2005) (noting that "the hallmarks of a valid conveyance are an exchange made in return for a fair equivalent and good faith"). "The question of what constitutes fair consideration is generally one of fact, to be determined under the circumstances of the particular case." *Wagman v. Lagno*, 141 A.D.2d 720, 721, 529 N.Y.S.2d 585 (2d Dep't 1988). However, it should be noted that § 273–a explicitly states that the intent of the transferor is

**520**

irrelevant. *See Gasser*, 353 F.Supp.2d at 354 ("A claim under DCL § 273 does not require proof 'of an intent to deceive or any of the traditional elements of fraud.'") (citations omitted); *see also Intuition Consol. Group, Inc. v. Dick Davis Publ'g Co.*, No. 03 Civ. 5063, 2004 WL 594651, at *3 (S.D.N.Y. Mar.25, 2004). The creditor seeking to set aside a conveyance as fraudulent bears the burden of proof to establish that the conveyance was made without fair consideration. *Petersen*, 849 F.Supp. at 231. However, "in cases where a conveyance has been made from one family member to another and the facts relating to the type of consideration are within their exclusive control, the defendant has the burden of proving the adequacy of the consideration." *Intuition Consol. Group*, 2004 WL 594651, at *3 (citing *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir.1994)).

Salem maintains that the consideration he received for conveying a one-half interest of the property at 7 Gellatly Drive to his wife was the ability to refinance his mortgage. However, he refinanced his mortgage in 1996 and did not convey the one-half interest to his wife until May 20, 1999, thirteen days after the $131,622.91 order[7] was rendered against him. (Pl. Reply Mem. Supp. Summ. J. at 2.) Salem maintains that in 1996 when he tried to refinance his mortgage in his name only, he was not permitted to borrow the amount of money he requested because not all of the equity belonged to him. (Salem Aff. # 1, Ex. D.) According to Salem, he was told this was because he was married and his wife was paying half of the mortgage payments since the payments were made from a joint bank account. (*Id.*) In addition, Salem stated that he was told

that even if his wife was not paying half of the mortgage, all income and assets acquired after marriage become marital property. Therefore, according to Salem "if my wife divorced me she would be entitled to half of the equity in the house regardless of the name on the Deed." (*Id.*) Consequently, when Salem was planning to refinance his mortgage again in 1999, to lower the interest rate and borrow as much money as possible, he was told that the deed should be changed to list his new name[8] and also include his wife's name. (*Id.*) As a result, Salem drafted a new deed which transferred a one-half interest in the property to Clodia Salem which was recorded on May 20, 1999. (*Id.*) Salem contends that he was not required to pay any transfer tax because "this was not considered a transfer, it was considered a Deed correction." (*Id.*) The crux of Salem's argument is that "[e]ven if the new Deed was not recorded in May of 1999, [his] wife would still have interest in the equity of the house on the basis of making half the mortgage payments, and being entitled to half the marital property." (*Id.*) In addition, Salem contends that, at the very least, there is a triable issue with respect to whether the conveyance was made in exchange for fair consideration.

Salem ignores the fact that, irrespective of the foregoing, the conveyance of a one-half interest to Clodia Salem was made without consideration. (Pl. Rule 56.1 Stmt. ¶ 18.) Where a debtor purchases or owns real property and later causes title to be conveyed to himself and his wife as a tenancy by the entirety, the transfer may be set aside by a creditor if it was made without consideration. *See A.L. Bazzini Co., Inc. v. Cappelini*, 282 A.D.

---

7. This figure is exclusive of interests and costs and the order was not the final judgment which was entered the following month.

8. Defendant had changed his surname from Neshewat to Salem, and was told that the change should be noted on the deed.

705, 122 N.Y.S.2d 115. 282 A.D. 705, 122 N.Y.S.2d 115 (2d Dep't 1953). In his deposition, Salem admits that no money was paid for the one-half interest that was transferred to Clodia Salem. (Salem Dep. at 14.) Instead, Salem focuses on the fact that the payments on the mortgage were made from a joint bank account; however, he admits that only he signed the mortgage and that he is the sole person responsible on the mortgage. (*Id.* at 14–15.) In addition, the original deed which transferred the property to Salem in the first instance, granted it only to him; the fact that payments on the mortgage on the property were made from a joint bank account does not effect a transfer of ownership to a tenancy by the entirety. *See* N.Y. EST. POWERS & TRUSTS LAW § 6–2.2.[9] Consequently, because all three elements necessary to establish a § 273-a fraudulent conveyance claim have been satisfied, plaintiff's motion for summary judgment to set aside Salem's conveyance of his house at 7 Gellatly Drive to himself and his wife is granted.

■ Moreover, Salem does not appear to deny that the transfer of the automobile to his wife was without consideration. Instead, Salem maintains that the Mercedes was transferred to Clodia Salem to reduce the insurance rate, and that the automobile was then donated to the American Heart Association on November 3, 2003. (Salem Aff. # 1 ¶ 14.) However, the conveyance occurred without consideration while there was an unsatisfied judgment pending, which has still not been satisfied. Consequently, the conveyance of the Mercedes must be set aside.[10]

For the reasons discussed above, summary judgment is granted with respect to plaintiff's claims that the transfers of the property at 7 Gellatly Drive and the Mercedes were fraudulent conveyances.

### 1. *Relief*

■ Generally, "the creditor's remedy in a fraudulent conveyance action is 'limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance.'" *TLC Merchant Bankers, Inc. v. Brauser,* No. 01 Civ. 3044, 2003 WL 1090280, at *3 (S.D.N.Y. Mar.11, 2003) (quoting *Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.,* 226 A.D.2d 1056, 1057, 641 N.Y.S.2d 947, 948 (4th Dep't 1996) (quotations omitted)). Section 278 of New York's Debtor and Creditor Law allows creditors, such as plaintiff, who have established that a conveyance is fraudulent and have a mature claim against the debtor, to seek an order from the Court to "set aside" the conveyance "to the extent necessary to satisfy his claim" or to "[d]isregard the conveyance and attach or levy execution upon the property conveyed." N.Y. DEBT. & CRED. LAW § 278. "The purpose of the remedy fashioned by DCL § 278 is to grant the creditor the right 'to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right.'" *Gasser,* 353 F.Supp.2d at 356 (quoting *Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 143, 27 N.E.2d 814 (1940) (citations omitted)). However, where the assets fraudulently transferred no longer exist or are no longer in possession of the transferee, a money judgment may be en-

---

9. N.Y. EST. POWERS & TRUSTS LAW § 6–2.2 provides that the disposition of real property to husband and wife creates in them a tenancy by the entirety. However, in the case at bar, the property was granted to Salem, and only Salem, in 1992. (Pl. Rule 56.1 Stmt., Ex. 3.)

It was not conveyed to Salem and Clodia Salem until May 24, 1999. (*Id.,* Ex. 4.)

10. It should be noted that the automobile is no longer in the possession of Maurice or Clodia Salem.

tered in an amount up to the value of the fraudulently transferred assets. *See TLC Merchant Bankers,* 2003 WL 1090280, at *3; *RTC Mortgage Trust 1995–S/NI v. Sopher,* 171 F.Supp.2d 192, 201 (S.D.N.Y. 2001) (citations omitted). "Under New York law, a creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *RTC Mortgage Trust,* 171 F.Supp.2d at 201–02 (citing *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir.1993) (applying New York law); *FDIC v. Porco,* 75 N.Y.2d 840, 842, 552 N.Y.S.2d 910, 552 N.E.2d 158 (1990); *Contractors Cas. & Sur. Co. v. I.E.A. Elec. Corp.,* 181 Misc.2d 469, 472, 693 N.Y.S.2d 915 (N.Y.Sup.Ct.1999)).

In the present case, Maurice and Clodia Salem were involved in and benefited from the fraudulent transfers. To the extent that the conveyances cannot be set aside, both are liable in money damages up to the value of the default judgment entered against Maurice Salem, but limited to the extent of the value of the assets transferred by Salem to Clodia Salem. *RTC Mortgage Trust,* 171 F.Supp.2d at 202.

### 2. *Attorney's Fees*

In addition, plaintiff requests for relief, pursuant to N.Y. DEBT. & CRED. LAW § 276–a, to recover attorney's fees. A finding of actual intent to hinder, delay or defraud creditors is required before attorney's fees will be awarded. *See Schoenberg v. Schoenberg,* 113 Misc.2d 356, 359, 449 N.Y.S.2d 137 (N.Y.Sup.Ct.1982). The burden of proof to establish actual fraud under section 276 is upon the creditor who seeks to set aside the conveyance and the creditor must meet this burden by clear and convincing evidence. *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 126, 508 N.Y.S.2d 17 (2d Dep't 1986) (citations omitted). "[F]raudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act." *Id.* at 128, 508 N.Y.S.2d 17.

Circumstances surrounding a transfer, such as whether the transfer was between spouses, the timing of the transfer and whether the transfer lacked consideration, can demonstrate that a transfer was effected with an intent to hinder, delay and defraud a plaintiff creditor. *See Prudential Farms of Nassau County v. Morris,* 286 A.D.2d 323, 324, 729 N.Y.S.2d 156 (2d Dep't 2001); *see also Marine Midland Bank,* 120 A.D.2d at 128, 508 N.Y.S.2d 17 (holding that defendants' actual intent to defraud was proven by circumstances established by the evidence). Furthermore, a transfer from husband to wife is to be examined carefully. *See Marine Midland Bank,* 120 A.D.2d at 128, 508 N.Y.S.2d 17. However, "[t]he determination of fraudulent intent 'is ordinarily a question of fact which cannot be resolved on a motion for summary judgment.'" *Mfrs. & Traders Trust,* 226 A.D.2d at 1058, 641 N.Y.S.2d 947 (quoting *Grumman Aerospace Corp. v. Rice,* 199 A.D.2d 365, 366, 605 N.Y.S.2d 305 (2d Dep't 1993)).

Although the circumstances surrounding the conveyance appear to establish that the defendants' actual intent was to hinder, delay or defraud plaintiff based on the fact that the transfer was between spouses without consideration while an action against Salem was pending, plaintiff has not shown by clear and convincing evidence that this was defendants' actual intent. Defendant's claim that the one-half interest in the property at 7 Gellatly Drive was transferred to Clodia Salem to refinance his mortgage creates, at the very least, a question of fact with respect to actual intent. Consequently, plaintiff's motion for summary judgment with respect to his request for attorney's fees

pursuant to N.Y. DEBT. & CRED. LAW § 276–a is denied. However, whether plaintiff is entitled to recover attorney's fees on another basis will be discussed, *infra* Part IV.

### III. *Motion to Quash and Maintain Status Quo*

Plaintiff also moves pursuant to N.Y. C.P.L.R. §§ 5225 and 5227,[11] for an order directing Luis Cruz, individually, and any other tenant of the premises at 7 Gellatly Drive, Wappingers Falls, New York, to turn over to plaintiff, as a judgment creditor, the amount due for March 2005 rent, in the amount of $2,100.00, and to continue to pay the monthly rent, to plaintiff, as a judgment creditor. (Goldstein Aff. ¶ 2.) Defendant, to the contrary, moves this Court for an order quashing plaintiff's "Restraining Notice to Garnishee" which was effectuated by plaintiff pursuant to N.Y. C.P.L.R. §§ 5225 and 5227 and also requests that this Court order that the status quo with respect to the premises at 7 Gellatly Drive be maintained pending disposition of this action. (Salem Affm. at 1.) In addition, plaintiff's attorney served a Sheriff's levy on defendant, pursuant to N.Y. C.P.L.R. § 5230,[12] and a Sheriff's sale of the premises is scheduled for April 13, 2005.

### A. *Restraining Notice to Garnishee*

N.Y. C.P.L.R. §§ 5222(b) and 5227 authorize a special proceeding to be commenced by the judgment creditor against

"a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or ... a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee"[13] or "any person who it is shown is or will become indebted to the judgment debtor."[14]

*Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 50 N.Y.2d 853, 430 N.Y.S.2d 38, 407 N.E.2d 1334 (1980) (quoting N.Y. C.P.L.R. §§ 5222(b) and 5227).

A two-step analysis is required in determining when money or property in possession of a third party must be transferred to a judgment creditor pursuant to § 5222(b). *See Beauvais v. Allegiance Sec. Inc.*, 942 F.2d 838, 840 (2d Cir.1991). "First, the creditor must be shown to have an interest in the money or property. Second, the creditor must be shown to be entitled to possession or have superior

---

**11.** FED. R. CIV. P. 69 provides that state laws for enforcing judgments are applicable in federal courts. *See Phoenician Trading Partners LP v. Iseson*, No. 04 Civ. 2178, 2004 WL 3152394, at *2 (E.D.N.Y. Dec.11, 2004) (citing *United Int'l Holdings, Inc. v. The Wharf (Holdings)*, 210 F.3d 1207 (10th Cir.2000)); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir.1995) (noting that § 5222(b) is made "applicable in the District Court via FED.R.CIV.P. 69(a)").

**12.** Neither plaintiff nor defendants state under what authority plaintiff's attorney ordered the Sheriff's levy. We are left to surmise it was pursuant to N.Y. C.P.L.R. § 5230 which provides in relevant part:

[a]t any time before a judgment or order is satisfied or vacated, an execution may be issued from the supreme court, county court or a family court, in the county in which the judgment was first docketed, by the clerk of the court or the attorney for the judgment creditor as officer of the court, to the sheriffs of one or more counties of the state, directing each of them to satisfy the judgment or order out of the real and personal property of the judgment debtor or obligor and the debts due to him or her. N.Y. C.P.L.R. § 5230(b).

**13.** N.Y. C.P.L.R. § 5225.

**14.** N.Y. C.P.L.R. § 5227.

right to the property." *Phoenician Trading Partners,* 2004 WL 3152394, at *3 (citing *Beauvais,* 942 F.2d at 840). "Restraining notices issued pursuant to § 5222 are effective against assets in which the judgment debtor has an 'interest,' and they 'only reach property and debts with such a connection to the judgment debtor.' Thus, if third parties 'do not have property or debts in which the judgment debtor has an interest, the restraining notices are not effective.' " *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 295 F.Supp.2d 366, 391 (S.D.N.Y.2003) (quoting *AG Worldwide v. Red Cube Mgmt.,* No. 01 Civ. 1228, 2002 WL 417251, at *8 (S.D.N.Y. Mar. 15, 2002)). In addition, the judgment debtor must be provided with notice of the proceedings by the judgment creditor under both §§ 5225 and 5227. *See id.* (citing *Citibank (South Dakota), N.A. v. Island Fed. Credit Union,* 190 Misc.2d 694, 740 N.Y.S.2d 546 (2d Dept. 2001)).

### 1. *Motion to Intervene*

"In effect, §§ 5225 and 5227 require the judgment creditor to proceed against the party that can produce the asset that the judgment creditor seeks, whether that party is the judgment debtor itself, or some third party." However, if there are other claimants of the debt or the property, or other interests in it, these other claimants are permitted to intervene. *See Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.,* 190 F.3d 16, 21 (2d Cir. 1999) (citing § 5525(b)); *see also* DAVID D. SIEGEL, *Practice Commentaries* § C5225:5 (McKinney 1997) (hereinafter *"Practice Commentaries"*) ("[A]ny person claiming an interest in the property [that is the subject of the special proceeding against

the garnishee] may intervene [in the proceeding].").

In the present case, Paragon seeks to intervene in this proceeding to determine its rights to the property at 7 Gellatly Drive with respect to the rental payments and the April 13, 2005 scheduled Sheriff's sale. Paragon claims that it should be permitted to intervene as a claimant to the property because it bought a one-half interest in the property at the bankruptcy auction. *See* § 5525(b) ("The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239."); [15] *see also Ruvolo v. Long Island R.R. Co.,* 45 Misc.2d 136, 146, 256 N.Y.S.2d 279 (N.Y.Sup.Ct.1965) (recognizing that third parties with an interest in the property may intervene formally to determine their rights). However, Paragon does not have any real interest in the property. As discussed *supra,* Part II.B., Salem's conveyance of a one-half interest in the 7 Gellatly Drive property to his wife, Clodia Salem, was a fraudulent conveyance that, pursuant to this Order, must be set aside.

 Although Paragon bought its interest at the bankruptcy auction, it did so by quitclaim deed. A quitclaim deed transfers only the right, title and interest the grantor has, and nothing more. Thus, "nothing is conveyed by a quitclaim deed if the grantor [herself] had no title to, nor interest in the property conveyed." 43A N.Y.Jur.2d Deeds § 228; *see also Chicago Title Ins. Co. v. Eynard,* 84 Misc.2d 605, 606, 377 N.Y.S.2d 895 (1st Dept. 1975) (noting that the grantee received only such title as the grantor had the in property); *Ebenstein v. Pritch,* 275 A.D. 256, 259, 89 N.Y.S.2d 282 (1st Dept. 1949) (acknowl-

---

**15.** Section 5239 provides that "[p]rior to the application of property or debt by a sheriff ... to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." N.Y. C.P.L.R. § 5239.

edging that a quitclaim deed "in the absence of some special recital or covenant" does not represent that the grantor had good title or that the grantor is the owner of any interest in the property transferred); *Brzozowski v. Boutinger*, 181 Misc. 379, 384, 43 N.Y.S.2d 57 (N.Y.Sup. Ct.1943). As discussed *supra*, the conveyance to Clodia Salem was fraudulent and must be set aside. Paragon bought Clodia Salem's one-half interest in the 7 Gellatly Drive property by a quitclaim deed that explicitly states that the property interest is "subject to all existing liens, claims, mortgages, encumbrances and claims of exemption." Therefore, because Clodia Salem had no interest to convey, Paragon did not acquire and does not own an interest in the property. Accordingly, Paragon's motion to intervene is denied.

### 2. *Garnishment of Rent*

A motion made pursuant to N.Y. C.P.L.R. § 5225 is analytically treated as a motion for summary judgment. Relief under this section, when based on the parties' submissions alone, can be granted only where there are no genuine issues of material fact. *See Aluminum Co. of Am. v. Moskovitz*, No. 88 Civ. 2616, 1991 WL 177246, at *2 (S.D.N.Y. Sept. 5, 1991) (citations omitted). Therefore, "[t]he summary disposition sought by [plaintiff] is warranted only if the entire record would inevitably lead a rational trier of fact to find in [his] favor." *Id.* (citing *Nat'l R.R. Passenger Corp. v. City of New York*, 882 F.2d 710 (2d Cir.1989)).

In the case at bar, a default judgment was entered against Salem in the amount of $166,884.86 on June 16, 1999 in the Dutchess County Clerk's Office. (Pl. Mem. Supp. Mot. at 2.) Plaintiff, to no avail, has tried to enforce this judgment against defendant, and, to date, has still not received any payments on the judgment. (*Id.*) Consequently, on February 17, 2005, in the New York Supreme Court

action against defendant, plaintiff's attorney, pursuant to N.Y. C.P.L.R. § 5222, served a Restraining Notice upon Luis Cruz, a tenant in the 7 Gellatly Drive premises who is paying monthly rent to Salem in the amount of $2,100. (*Id.*) Cruz presently owes the March 2005 rent and will continue to owe such rent monthly. (Goldstein Aff. ¶ 11.) However, a foreclosure action has been instituted by Citibank, N.A. ("Citibank") on the 7 Gellatly Drive premises in the Supreme Court of Dutchess County. (Pl. Mem. Supp. Mot. at 2–3.) An application for summary judgment by Citibank is pending in that action. (*Id.*)

■■■ Section 5201 of the New York C.P.L.R. provides that "[a] money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor ...." N.Y. C.P.L.R. § 5201(a). It is clear from the record that plaintiff has a money judgment against Salem that is unsatisfied. Thus, plaintiff is entitled to enforce his money judgment against Salem by way of the rent payable to him. However, this is limited to the rent that was due for March 2005 because only that debt is certain. Plaintiff cannot serve Cruz with a restraining notice for future rent because "[f]uture rents are not leviable or attachable under CPLR 5225 and 5227. They do not constitute tangible personal property or a debt certain to become due." *Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 70 A.D.2d 859, 418 N.Y.S.2d 51 (1st Dep't 1979), *aff'd*, 50 N.Y.2d 853, 430 N.Y.S.2d 38, 407 N.E.2d 1334 (1980) (internal citations omitted); *see also Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968) (noting that a debt for future rent is not a debt certain and therefore is not attachable); *but see ABKO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 385

N.Y.S.2d 511, 350 N.E.2d 899 (1976) (holding a contractual obligation leviable regardless of its contingent nature); DAVID D. SIEGEL, *New York Practice* § 489 (3d ed.1999) (discussing *ABKO*'s impact on the holding of *Glassman* and concluding that "as long as a New York situs can be spelled out for the intangible at issue, it can be given 'property' treatment under CPLR 5201(b) and subjected to levy").[16]

Although defendant maintains that the rent is needed for mortgage payments and maintenance of the property, this does not change the fact that he is a judgment debtor who has still not paid plaintiff the money he is rightfully owed. *See Garland D. Cox & Assocs., Inc. v. Koffman,* 74 A.D.2d 687, 689, 425 N.Y.S.2d 870 (3d Dep't 1980) (holding that funds set aside in escrow by judgment debtor for "contemplated maintenance and repair costs" are reachable by judgment creditor).

Defendant also maintains that if plaintiff is entitled to the rental payments, it would only be pursuant to C.P.L.R. § 5231(b), which usually limits the amount that can be levied to ten percent of defendant's income. We agree with defendant that plaintiff cannot collect the future rent pursuant to § 5225(b); however, he can collect past rent due pursuant to § 5225(b) for the reasons discussed above. Furthermore, we note that it may be possible for plaintiff to levy against the future rents pursuant to N.Y. C.P.L.R. § 6216.

'Where the real property is located in the same State of as the forum, the levying creditor has no problem. He levies against the real property in this State simply by filing a notice of levy in the appropriate county clerk's office (CPLR 6216; 7A Weinstein–Korn–Miller, N.Y.Civ.Prac., par. 6216.01 Et seq.). It then becomes a lien against the real property without first discharging the lien. If it is necessary to reach the accruing rents, a simple form of receivership is available after judgment (CPLR 5228, subd. (a); 6 Weinstein–Korn–Miller, op. cit. par. 5228.01 Et seq.)'

*Mobil Oil Corp. v. Lovotro,* 65 Misc.2d 729, 731, 318 N.Y.S.2d 989 (N.Y.Co.Ct.1971) (quoting *Glassman,* 23 N.Y.2d at 359–60, 296 N.Y.S.2d 783, 244 N.E.2d 259).

Nonetheless, as discussed earlier, the levying of future rent is a moot point because the property for which the rent is collected is scheduled to be sold at a Sheriff's sale on April 13, 2005, pursuant to N.Y. C.P.L.R. § 5230, to which we will now turn our attention.

### B. Sheriff's Sale

Defendant requests an order to stop the scheduled April 13, 2005 Sheriff's sale and to maintain the status quo with respect to the 7 Gellatly Drive property. However, we have already determined that defendant's counterclaim for vacatur of the default judgment is without merit and should be dismissed and that the conveyance of a one-half interest to his wife was a fraudulent conveyance that must be set aside. Consequently, there is no reason to stay the enforcement of the judgment or to stop the impending Sheriff's sale since plaintiff properly sought execution of his judgment against Salem pursuant to C.P.L.R. § 5230. However, it is necessary to ad-

---

**16.** We acknowledge that there is some doubt surrounding whether future rents are in fact leviable or attachable. *See, e.g., Cmty. Bank, Nat'l Ass'n v. Lyons,* 177 B.R. 772, 774 (N.D.N.Y.1995). However, it is unnecessary to address this issue at length because, as discussed below, whether plaintiff is entitled to attach or levy the future rent is a moot point because of the impending scheduled Sheriff's sale of the property in question. In addition, *Glassman,* the Court of Appeals case which held that future rents are not leviable or attachable because of their contingent nature, has never been explicitly overruled.

dress the pending foreclosure action by Citibank, a mortgagee of the subject property.

Section 5236(b) of the N.Y. C.P.L.R. provides that "[r]eal property mortgaged shall not be sold pursuant to an execution issued upon a judgment recovered for all or part of the mortgage debt." Although the mortgaged property appears to be the most appropriate source from which to satisfy the debt, section 5236(b) does not permit this because the mortgagor is entitled to a right of redemption on formal foreclosure of the mortgage. However, "[a]ny other judgment creditor of the mortgagor can levy against the mortgaged parcel, but the purchaser at the execution sale will take subject to the mortgagee's lien, if senior in time to the lien of the judgment being levied on or if the mortgage involved is a purchase money mortgage." McKinney's Practice Commentary [C5236:3] following N.Y. C.P.L.R. § 5236 (citing N.Y. C.P.L.R. § 5203(a)(2)). Furthermore, "[i]t has long been established that first in time priority obtains as between mortgages and judgments." *Bank Leumi Trust Co. v. Liggett*, 115 A.D.2d 378, 380, 496 N.Y.S.2d 14 (1st Dep't 1985) (citations omitted).

■ Accordingly, a creditor whose judgment lien is either senior or junior to that of the levied judgment must, upon being notified of the sale of the real property under the execution, deliver an execution to the sheriff. *See* DAVID D. SIEGEL, *New York Practice* § 500 (3d ed.1999). If the creditor fails to do so the lien is forfeited. *See id.* If a senior creditor does deliver an execution, "he will have first crack at the proceeds of the sale, even though it is at another judgment creditor's initiative that the sale is taking place." *Id.* Proceeds must be distributed by the sheriff in the order of lien priority of the judgment on which he has received executions.... Other categories of senior lienholder, such as a mortgagee, retain their liens, to which the buyer at the sale takes subject, but junior lienors are wiped out by the sale. For that reason, a mortgagee or other lienor junior to the judgment being levied on is also allowed to share in any surplus that an execution sale on that judgment may produce. *Id.* Consequently, the scheduled Sheriff's sale is permitted to go forward. If the mortgage was recorded prior to the plaintiff judgment creditor's lien on the property, the mortgage will pass with the property. If, however, the mortgage was recorded subsequent to the plaintiff's recorded lien on the property, the mortgagee will be entitled to share in any surplus the execution sale may produce.

We need not address defendant's motion to maintain the status quo because we have already determined that defendant's counterclaim to vacate the default judgment must be dismissed; thus there is no reason to stay the enforcement of the judgment. As a result, the default judgment in the amount of $166,884.86 stands and plaintiff is entitled to collect this judgment by way of execution.

## IV. *Monetary Sanctions and Injunctive Relief*

Plaintiff requests that this Court sanction defendant pursuant to FED. R. CIV. P. 11 and 28 U.S.C. § 1927, in addition to requesting injunctive relief to enjoin defendant from commencing further legal action. (Pl. Mem. Supp. Summ. J. at 14–15.) Plaintiff also requests an award of attorney's fees and costs pursuant to Rule 11 and 28 U.S.C. § 1927. (*Id.* at 16, 18.)

### A. *Sanctions*

Rule 11 permits sanctions to be imposed on an attorney for filing a claim containing frivolous legal arguments or factual allegations utterly lacking in evidentiary sup-

port. *See O'Brien v. Alexander,* 101 F.3d 1479, 1488–90 (2d Cir.1996). Sanctions may be imposed where court papers have been signed, filed, submitted, or later advocated, for an "improper purpose, such as to harass or cause unnecessary delay or needlessly increase ... the cost of litigation," or "the claims, defenses and other legal contentions therein are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of a new law." FED. R. CIV. P. 11(b). If a court determines that Rule 11 has been violated, it "may impose ... an appropriate sanction upon the attorneys, law firms, or parties that have violated [the subdivision] or are responsible for the violation." FED. R. CIV. P. 11(c).

A court's power to impose sanctions under Rule 11 is "discretionary rather than mandatory" and sanctions "should be imposed with caution." *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994). "[A]ny and all doubts must be resolved in favor of the signer." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985); *see also Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir. 1993) (" 'When divining the point at which an argument turns from merely losing to losing and sanctionable, ... we have instructed the district courts to resolve all doubts in favor of the signer.' ") (citations omitted). Furthermore, Rule 11 sanctions must be tailored to the particular facts and circumstances of the specific case, in the discretion of the court. *See Weil v. Markowitz,* 829 F.2d 166, 171 (D.C.Cir.1987). Rule 11 does not, in any way, limit a court's choices with respect to an appropriate sanction. *Williams v. Revlon Co.,* 156 F.R.D. 39, 44 (S.D.N.Y.1994). "Deterrence is frequently stated to be the chief goal of Rule 11, but it also has been said that '[t]he compensatory, punitive, and deterrent aspects of sanctions may have varying claims to priority depending on

the nature of the case and the violation.' " *Id.* (citations omitted).

In addition, 28 U.S.C. § 1927 provides for the imposition of sanctions against "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously [and sanctions] may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. " 'By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and, it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics.' The purpose of the statute is to deter unnecessary delays in litigation and bad faith is the 'touchstone of an award under [the] statute.' " *Wechsler v. Hunt Health Sys., Ltd.,* 216 F.Supp.2d 347, 357 (S.D.N.Y.2002) (quoting *United States v. Int'l Bd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991) (McLaughlin, J.)). Courts will generally infer bad faith "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *ACLI Gov't Secs., Inc. v. Rhoades,* 907 F.Supp. 66, 68 (S.D.N.Y.1995) (citing *Keller v. Mobil Corp.,* 55 F.3d 94, 99 (2d Cir.1995)); *see also In re 680 Fifth Ave. Assocs.,* 218 B.R. 305, 321 (Bankr.S.D.N.Y.1998) ("Bad faith is present when the court finds that an attorney's actions were motivated by an improper purpose, such as harassment or delay, and were also entirely without color.").

The record here demonstrates that Salem is intent on litigating the same issues over and over again in the hopes of obtaining a more favorable result. In the present lawsuit, Salem's counterclaim seeking to vacate the default judgment was frivolous and completely without merit. The

section on which he relies explicitly directs that such relief must be sought from the court which rendered the judgment. Thus, it is clear that his counterclaim was both baseless and made without reasonable and competent inquiry. Additionally, we note that the default judgment which defendant has failed to pay arose out of an action against him for malicious prosecution and abuse of process, further demonstrating Salem's propensity for vexatious lawsuits. Consequently, we conclude that sanctions are warranted, but that, for the reasons discussed below, the sanctions would be most appropriate in the form of injunctive relief.

## B. *Injunctive Relief*

■■■■■ When a party files repeated lawsuits involving the same nucleus of operative facts, a district court has the inherent power to enjoin him from filing vexatious lawsuits in the future. *See Malley v. N.Y. City Bd. of Educ.*, 112 F.3d 69, 69 (2d Cir.1997) (affirming injunction where the plaintiff had filed repeated lawsuits concerning the same nucleus of operative facts.); *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir.1986) ("Ultimately the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties."); *Raffe v. John Doe*, 619 F.Supp. 891, 898 (S.D.N.Y.1985) (Conner, J.) (enjoining litigant from filing future lawsuits when that litigant had a history of filing vexatious lawsuits). Moreover, the court has a constitutional duty to enjoin the filing of frivolous lawsuits in order to preserve judicial resources when the litigant is likely to file more suits in the future. *See In re Martin–Trigona*, 737 F.2d 1254, 1261 (2d Cir.1984) (noting that injunctive relief is particularly appropriate when the plaintiff appears judgment-proof because sanctions would be ineffective); *see also In re Hartford Textile Corp.*, 659 F.2d 299,

305 (2d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982) ("The United States Courts are not powerless to protect the public, including litigants ... from the depredations of those ... who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings."). Furthermore, "the traditional standards for injunctive relief, i.e. irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *In re Martin–Trigona*, 737 F.2d at 1262.

■■■ In the present case, we have little difficulty concluding that the circumstances necessitate some restriction on future litigation by Salem. Salem has instituted numerous lawsuits and counterclaims against plaintiff and plaintiff's counsel which have no merit and which needlessly waste precious judicial resources in addition to harassing plaintiff and his counsel. While we recognize that the imposition of monetary sanctions might be warranted, it is unlikely that such sanctions would successfully curb future litigation by Salem as he appears to be nearly judgment-proof. Salem has still not paid the default judgment entered against him in 1999, and in the current lawsuit in which plaintiff sought to set aside a fraudulent conveyance frustrating collection of this judgment, Salem has merely repeated his previous efforts to obtain vacatur of the default judgment. Therefore, because monetary sanctions would be insufficient to deter future litigation, an injunction is warranted. However, we are mindful that the injunction must be fashioned carefully to avoid prejudicing Salem's legitimate due process rights.

Accordingly, Salem is hereby enjoined from filing or prosecuting, without leave of this Court, further actions or proceedings

**530**

in the federal courts against Neshewat or his counsel Paul J. Goldstein and Goldstein & Metzger, LLP seeking review of or relief from the default judgment entered against him in New York State Supreme Court. *See Polur v. Raffe,* 912 F.2d 52, 57 (2d Cir.1990). However, the injunction does not extend to state courts because "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests." *In re Martin–Trigona,* 737 F.2d at 1263.

### *CONCLUSION*

For all of the foregoing reasons, plaintiff Michael Neshewat's motion for summary judgment is granted with respect to setting aside the fraudulent conveyances pursuant to N.Y. DEBT. & CRED. LAW § 273–a, but denied with respect to his request for attorney's fees pursuant to N.Y. DEBT. & CRED. LAW § 276–a. Plaintiff's motion to dismiss defendant Maurice Salem's counterclaim is also granted, and Salem's motion to amend the counterclaim is denied.

The motion to intervene made by Paragon Associates of New York, Inc., a nonparty adverse claimant, is denied. Also, defendant's motion to quash plaintiff's "Restraining Notice to Garnishee" which was effectuated pursuant to N.Y. C.P.L.R. §§ 5225 and 5227 and plaintiff's cross-motion seeking an order that the rental payments generated from the 7 Gellatly Drive property be turned over to plaintiff are both granted in part and denied in part. Plaintiff is entitled to collect the March 2005 rent, but with respect to future rent, plaintiff's motion is denied as moot. In addition, defendant's motion seeking to maintain the status quo and stay the scheduled Sheriff's sale is denied. The Sheriff's sale, scheduled for April 13, 2005, shall occur as scheduled.

Plaintiff's motion seeking sanctions and injunctive relief pursuant to FED. R. CIV. P.

11 and 28 U.S.C. § 1927 is granted in part. Salem is hereby enjoined from filing or prosecuting, without leave of this Court, further actions or proceedings in the federal district courts against Neshewat or his counsel Paul J. Goldstein and Goldstein & Metzger, LLP seeking review of or relief from the default judgment entered against him in the Supreme Court of Dutchess County, New York on June 16, 1999.

SO ORDERED.